Board of Public Instruction of Palm Beach County, *et al.,* v. Jackson B. McDonald.

196 So. 859
Division B
Opinion Filed June 18, 1940

*C. D. Blackwell,* for Appellants;

*Evans Crary,* for Appellee.

PER CURIAM.—Appeal from a final decree of the Circuit Court for Palm Beach County, decreeing specific performance of an oral contract for the exchange of property, part performance being shown. Appellee, plaintiff below, is the owner of a plot of land in Tract 60 adjacent to a plot in the same Tract owned by the Board of Public Instruction

of Palm Beach County, appellants, and used for public school purposes. Appellants also own another plot close by in Tract 61 in the City of Pahokee.

The parties agreed on June 12, 1934, to exchange their respective plots in Tracts 60 and 61, so that all the land of appellants would be contiguous and in Tract 60, in order to facilitate its use for school purposes.

The contract to exchange was an oral one, the only writing relative to the agreement being the following, taken from the minutes of the school board:

"On recommendation of Mr. McClure, trustee at Pahokee, the Board agreed to exchange with J. B. McDonald a strip of land 270 feet along the Pahokee-Belle Glade road for a strip 390 feet lying adjacent to the negro school property at Pahokee. The 270 feet included 30 feet, the width of the street, between the school property and the property released to Mr. McDonald."

Appellants contend that this written memorandum of contract is too indefinite in description to satisfy the statute of frauds. Appellee does not, however, rely on a written memorandum, but relies on the oral agreement to exchange, coupled with sufficient part performance to justify specific performance.

It appears from the record that the janitor of the negro school at Pahokee has entered upon appellee's land and that he is farming said land in part payment of his wages as janitor. Appellants contend that the janitor went upon the land without their knowledge or approval and several of the members of the board testified to this effect. However, A. Q. Howell, board member from Pahokee during 1935 and 1936, testified that it was the custom of the board to have each of its three members supervise and control the activities of the board in his particular district. Howell

further said that he knew the janitor was farming the land of appellee in part payment for his services as janitor, and that the janitor had, during Howell's term of office, complained to him and in turn to the board about not being able to make enough money from his farming operations, and asked for a raise in his cash wage, which the board granted.

The knowledge of the board member from Pahokee, and the subsequent increase in salary of the janitor are sufficient to constitute consent by the board to the janitor's acts of possession.

Appellee alleges that soon after the appellant's janitor entered upon appellee's land, appellee in turn entered appellant's land and began to improve it. The record shows that considerable improvements were made, the plot being subdivided and streets dedicated, and that several lots were contracted to be sold, the purchasers entering and making additional improvements. The testimony was to the effect that appellants knew of these actions taken by appellee, or should have known of them.

In Pomeroy's Specific Performance of Contracts, third edition, we find the following:

"It is well settled that possession need not be provided for in the agreement, but if taken in pursuance of it—that is, because of it, such possession is none the less in execution of it. If a verbal contract is made to sell and convey a tract of land, the purchaser becomes thereby vested with the equitable title, and any acts done upon the land by him as owner, or which proceed from and tend to show such ownership, are in fact done in execution of the contract—in other words, they carry the contract into effect. No acts more clearly indicate a proprietorship in the purchaser, and therefore point more unequivocally to the agreement from

which such proprietorship arises, than the making of valuable and permanent improvements on the land; and this result is evidently the same, whether the improvements were stipulated for or not; indeed the making improvements, when the contract was utterly silent in reference thereto, is perhaps the more emphatic assertion of the purchaser's interest, of his equitable estate, and of his purpose to carry the agreement into effect." Section 127, page 327.

There was sufficient part performance of the oral contract to take it out of the statute of frauds.

Appellants contend that there was no mutuality of remedy at the time appellee filed his bill of complaint and that therefore specific performance could not be decreed. This contention is based on the asserted fact that appellee's title consisted only of an executory contract to buy running to his wife, and that appellee's wife had not joined in the bill and had not offered to perform. No issue was made of this point in the court below by any of the pleadings, nor was there any testimony taken concerning it. The bill of complaint and amendments thereto allege title in fee simple in appellee. The answer and amendments set out objections to the title, none of which objections included a defect caused by title being in appellee's wife. The objection that title is in appellee's wife cannot be raised here for the first time.

It is urged by appellant that previous to the filing of the bill of complaint, they had rescinded the contract to convey which they had a right to do because appellee had no title, a fact known to appellee and unknown by appellants, and because appellee displayed such indifference in perfecting his title.

The agreement to exchange was to be consummated when the attorney for the school board approved the title. Ap-

pellee had a deed executed by Armstrong, former owner of the plot, direct to the board. This deed was delivered to the board's attorney. Because of the existence of a mortgage foreclosure and suit to quiet title on some property, part of which was appellee's plot in Tract 60, abstract was not delivered for more than a year.

No written objections to the title were ever presented appellee, though it appears that he was orally notified that defects existed and would be pointed out to him if he came to the board attorney's office. No specific objections were given, however, until the pendency of this suit.

Appellants attempt to show that if the board had known appellee had no title to the property they would never have made the agreement with him. Former members of the board testified to this effect and also that the board was anticipating a speedy exchange.

It was not necessary for appellant to have a good, indefeasible, and unincumbered title at the time he entered into the contract of sale. It is sufficient that he be able to convey when he be required to do so. Sanford v. Cloud, 17 Fla. 532; 58 C. J. 1104, Sec. 378.

Appellants allege that appellee had a reasonable time within which to perform, but that he had exceeded a reasonable length of time and they were justified in rescinding the contract. To support this contention appellants rely on Reese v. Levin, 98 Fla. 397, 123 So. 809; and Hilliard v. Futch, *et al.*, 99 Fla. 654, 127 So. 341. In both of these cases there was a contract of purchase and sale, in which vendor had a reasonable time after date of the contract to make the title good. In both cases, after the abstract was presented, attorney for vendee pointed out objections, the defects requiring a suit to quiet title involving many parties. On hearing of the necessity of such a suit vendee in both

cases elected to rescind. There having been nothing done except the deposit of a small portion of the purchase price with the vendor, this Court held the time unreasonable in each of these cases.

In the instant case, the suit to quiet title has been prosecuted to completion, no objections had been specifically pointed out until the answer and amended answer to the bill and amendments thereto had been filed. Such objections, with one notable exception to be discussed later, have been removed. Here also, both parties have entered the property of the other and one party has made considerable improvements. The cases are not analogous.

The title to all the property in that particular section is notoriously involved, and complaints about it are many. The abstract was of necessity a voluminous manuscript and could not be prepared until the suit to quiet title had been completed. The time taken to do this was not unreasonable.

The agreement to exchange was made subject to the condition that the attorney for the school board approve appellee's title to the land he was to convey. Absent this approval, appellants contend that since the condition has never been complied with specific performance cannot be decreed. Appellant concedes the fact that if the objections of the attorney are unreasonable, then the court may ignore the attorney's disapproval of the title.

There are three objections to the title, as pointed out by the attorney for the school board on the witness stand. One of these objections has been cured. Another questions the legality of a conveyance in a deed by a blanket clause of all the property both real and personal, owned by a corporation in a designated section, township, and range. The property of appellee was formerly a part of that conveyed generally, the blanket clause being as follows: " * * * It

is the intention of Pahokee Realty Company to include in the deed all the property, both real and personal, which it may own in said fractional Section 18, Township 42 South, Range 37 East." Such a general description, where the property may be located exactly is sufficient to convey grantor's title to the property so described. 16 Am. Jur. 591, Section 272.

The third objection is predicated upon a break in the chain of title, as expressed by the school board attorney on the stand: " * * * Entry 37-B of the abstract shows a mortgage from W. C. Chalker to the Pahokee Realty Company on the McDonald tract; this mortgage is dated prior to the deed to Homer Vivien, conveying the land in the blanket clause. It would suggest that probably the Pahokee Realty Company had already conveyed the land in an outstanding unrecorded deed. * * * "

Of this alleged defect in title the learned circuit judge said, in his final decree: " * * * the failure of the mortgagor, Chalker, to have any title whatsoever to the land, indicated that the mortgage was not a cloud on the title of the true owner, and was without any existence as a defect in the title; * * *."

In speaking of defects of titles which prevent specific performance, Pomeroy says:

"Whatever be the cause from which the doubt arises, whether from an unsettled principle of the general law, or from the difficulty of construing instruments, or from past facts and events, it must be something more than a mere speculation, theory or possibility. A court of justice, in all its investigations, deals with arguments more or less based upon a balance of probabilities; and in rendering its decisions must be satisfied if it reaches a conclusion which is morally certain. To admit of objections ·which were

purely speculative, or *mere possibilities,* would destroy the practical efficacy of all judicial proceedings. A doubt covering the vendor's title, therefore, which can avail to defeat his remedy of specific performance, must be *reasonable,* and so far as it depends upon contingent events and uncertain facts, their occurrence or existence must be fairly probable." Pomeroy's Specific Performance of Contracts, Section 204, page 524.

While on the stand, the attorney for the school board testified as follows:

"Q. Do you find that up to the present time it is ever shown by such abstract or by any other record of which you have knowledge, that W. C. Chalker has ever held any title to the property in question?

"A. There is nothing in the abstract.

"Q. Do you know of any other record which would show that he was the title holder to such property?

"A. I know of no right that Chalker had other than which might be inferred by the bare fact of the execution of the mortgage."

The doubt covering appellant's title was not a reasonable one, justifying attorney for the board's disapproval of the title.

Lastly, appellants urge that specific performance cannot be decreed because appellee never tendered a deed before bringing suit. It appears from the record that appellee procured a deed from Armstrong and his wife, the then titleholders, directly to the school board, and filed this deed with appellants shortly after the agreement to exchange was entered into. No objections were ever made to this deed. Appellants later executed a deed to appellee and gave it to their attorney to hold and accepted an abstract of title from appellee, making an examination thereof.

386

Such acts are sufficient upon which to base specific performance.

While there has been considerable delay on the part of both parties in carrying out the contract, the delay has not harmed appellants. The permanent improvements made by appellee, together with his open, notorious and actual possession of the land, to the knowledge of and without objection from appellants would render it inequitable to refuse specific performance. The decree of the circuit court ordering specific performance is therefore—

Affirmed.

TERRELL, C. J., WHITFIELD, CHAPMAN and BUFORD, J. J., concur.

BROWN, J., concurs in conclusion.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.