79 So.2d 682 (1955)
Pablo ROSELLO, Appellant,
v.
Weldon C. HAYDEN, Appellee.
Supreme Court of Florida. Special Division A.
April 20, 1955.
Rehearing Denied May 13, 1955.
*683 Frank Ragano, Tampa, for appellant.
Raymond Sheldon, Tampa, for appellee.
SEBRING, Justice.
Rosello, the owner of a certain business property in Tampa, Florida, leased the property to one Hutchinson for a one-year term beginning March 17, 1948, with the privilege of renewal for an additional five-year term. Before the one-year term expired, Hutchinson exercised the option and the leasehold term was extended for the five-year period. Subsequently, by mesne assignments, the appellee Hayden became the lessee under the lease by assignment from the estate of one Oliverio.
On March 8, 1954, nine days before the expiration of the extended term of the lease, Hayden gave notice to the lessor of his intention to exercise the option to purchase the property, contained in the original lease, which provided as follows:
"It is hereby covenanted and agreed by and between the parties hereto that the said Lessor hereby grants unto the said Lessee an option to purchase the above described property at any time during the life of this Lease for the sum of $18,000.00, payable $5,000.00 cash at the time of closing following the exercise of the option to purchase by the Lessee, and the balance of $13,000.00 at the rate of $200.00 per month, which said monthly payments shall include interest at the rate of 5% per annum, payable monthly, on the sum remaining from time to time unpaid."
At the time the notice was given Hayden tendered to the lessor, as the first payment *684 under the option agreement, two cashier's checks in the aggregate sum of $5,000. The lessor refused to accept the checks, stating that "he didn't want to sell the property, that he would have to see his lawyer." On the following day Hayden, through his attorney, mailed the two cashier's checks to the lessor's attorney together with a written notice that Hayden desired to exercise the option and was "prepared to complete the closing of this transaction with you on short notice." On March 15, 1954, the day before the lease expired, the attorney for the lessor advised Hayden that his client did not intend to sell the property to Hayden for the reason that the option to purchase was personal and therefore limited to the original lessee and for the further reason that the cashier's checks did not constitute legal tender. Upon receipt of this letter Hayden immediately tendered to the lessor the sum of $5,000 in cash, which the lessor refused to accept, on the previously stated ground that he did not desire to sell the property.
Five days after the expiration of the lease, the appellee Hayden instituted the instant suit against the lessor averring in his complaint the facts above stated. With the complaint he deposited $5,000 in the registry of the court, repeating in his complaint his offer to purchase the property in accordance with the terms of the option. Upon motion of the defendant the trial court dismissed the complaint on the ground that the complaint failed to state a claim upon which relief could be granted and gave fifteen days to the plaintiff within which to file an amended complaint. Within in the time required, Hayden filed an amendment to the original complaint in which he averred that he "is now and has at all times been prepared to abide by the terms and provisions of the option to purchase contained in the lease held by plaintiff by assignment; the plaintiff is prepared to pay the entire purchase price of said property in cash, the sum of $18,000.00 as provided by said contract. The plaintiff has deposited an additional $13,000.00 in the registry of this court, which represents the entire price of said property. Plaintiff has done this to show that he is in good faith; to show that he is entitled to a decree of specific performance against the defendant at the time of the filing of this amendment to the complaint hereof."
To the amended complaint the lessor set up by way of motion to dismiss, and by answer, the defenses, in substance, (1) that the option to purchase the property on terms involved a relation of personal confidence and reliance by the lessor on the solvency and pecuniary credit of the original lessee and consequently was not assignable by the original lessee; and (2) that conceding the option to be assignable, it could not be enforced by Hayden even though he had deposited in the registry of the court the whole purchase price, after the tender of the first payment in accordance with the terms of the option agreement had been refused by the lessor, for the reason that such deposit had not been made until after the lease had expired by its own terms.
The motion to dismiss the amended complaint was denied and the trial court heard evidence on the issues made by the amended complaint and answer. At final hearing the court rejected the defenses interposed by the lessor and entered a decree requiring the lessor to accept the whole purchase price that had been deposited in the registry of the court, and to execute a deed to the property to Hayden. With the decree the trial court filed an opinion setting out the reasons for the entry of the final decree in favor of the plaintiff, which were based on the following conclusions:
1) The evidence failed to establish the existence of a relationship of confidence and trust between the lessor and the original lessee at the time the lease was made or that in making the lease and granting to the lessee the option to purchase on terms the lessor relied upon the solvency or financial standing of the original lessee;
2) Though the entire purchase price of the property was not tendered by Hayden to the lessor until after the expiration of the lease, the lessor was estopped, because of his conduct in his dealings with Hayden *685 prior to the time Hayden gave notice of his intention to exercise the option and during the period of negotiations between the parties, to deny that the option to purchase did not pass by assignment to Hayden, or that the tender of the purchase price for the property was made too late.
As to the first conclusion upon which the trial court predicated its decree, there was evidence in the record that the original lessee, Hutchinson, had met the lessor, Rosello, for the first time only a few days prior to the execution of the lease; that prior to the meeting he and Rosello were absolute strangers; that he, the lessee, met the lessor as the result of seeing a "For Rent" sign in front of the premises that were subsequently leased to him; that prior to the execution of the lease Rosello did not investigate the credit rating of Hutchinson, inquire about his business activities or financial status, or ask that he produce a bank statement or other evidence showing his ability to meet the obligations imposed by the lease or to comply with the terms and conditions of the option in the event he decided to purchase the property.
It was from this evidence that the trial court concluded that no relationship of trust and confidence existed between the lessor and the original lessee at the time the lease was executed, and that in the transaction the "relationship between the two parties was none other than parties dealing at arm's length in the ordinary business transaction."
As to the second conclusion upon which the trial court predicated its decree, that the lessor was estopped to deny the right of Hayden to purchase the property even though he had not tendered the whole purchase price until after the expiration of the lease, the trial court found that the lessor, Rosello, "thought and believed that he was bound to honor the option, as written, and convey to Hayden, as assignee, prior to Hayden's purchase of the lease from the Oliverio estate and while such transaction was in negotiation. This is evidenced by his own testimony and that of Mitchell, the real estate agent who was representing Hayden in negotiating the purchase of the lease from the Oliverio estate. It appears during these negotiations in Rosello's place of business and in his presence one Flores offered to pay Mitchell $500 to secure from Hayden a withdrawal of his offer to purchase the lease from the Oliverio estate in order that Flores might secure an assignment of the lease for himself. In making this offer the understanding between Rosello and Flores was that the latter, if he secured the lease, would relieve Rosello from the option by taking a new lease from him deleting the option. Rosello further confirmed this belief later by requesting Mitchell to contact Hayden and ask him to surrender or cancel the option and offering to give him a new lease with longer terms.
"It further appears in a conversation between the parties on or about March 4, 1954, when Hayden contacted Rosello at his place of business to inform him that he would exercise the option, Rosello told him that he did not want to sell the property. To the numerous and repeated attempts over several days between March 4 and 15 by [Hayden's attorney] to get an answer to Hayden's offer of performance, neither Rosello nor his counsel ever until March 15, the next [to] last day of the term of the lease, in a letter from * * * his counsel, delivered by messenger to [the office of Hayden's attorney] refusing performance for the first time advanced the objection that the option to buy was personal to Hutchinson only and not assignable to or available to Hayden.
"This conduct of Rosello and that of Flores offering Mitchell $500 to get Hayden to withdraw his offer to buy the lease from the Oliverio estate while Hayden was negotiating for its purchase and his further attempt after Hayden had bought the lease to get Mitchell to persuade Hayden to surrender it clearly implies that he considered himself bound to honor the terms of the option and it was amply sufficient to lead Hayden to believe that he would so honor it; that Hayden did rely on this conduct of Rosello is plain and Rosello's refusal to give any kind of an answer to *686 the repeated offers of performance until the next [to] last day of the lease suggests that it was patently done so that Hayden wouldn't have an opportunity to tender the entire price in cash."
Under these circumstances, it was the conclusion of the trial court that "Hayden's tender of the balance of the cash payment of $13,000.00 making up the total purchase price on June 14 was not in equity too late to require specific performance * * * that Rosello by his own construction of the option that he was bound to honor it and known to Hayden prior to his purchase of the lease from the Oliverio estate should be estopped to deny that he was bound by its terms as against Hayden; [and] should be estopped by his conduct throughout the transaction to contend that the tender of the full purchase price was too late."
The question on the appeal is whether or not the entry of the decree in favor of plaintiff was warranted, upon these findings and conclusions.
The general rule is that "where a lease of real property contains an agreement giving to the lessee the privilege of purchasing the property covered by the lease, under stated conditions, such covenant runs with the land and the option to purchase passes upon assignment of the lease to the assignee thereof." 32 Am.Jur. 280. However, it has been said that "Where personal confidence is reposed by the lessor in the lessee, as where the privilege to purchase is partly on credit * * * this consideration should take the case out of the general rule that the option is not merely a personal one, because to permit the enforcement of the option by an assignee would be to give to the lessor a debtor whom he would not himself choose." 51 C.J.S., Landlord and Tenant, § 85, pp. 645, 646. The general rule and its exception have been recognized in Florida. Frissell v. Nichols, 94 Fla. 403, 114 So. 431.
Upon the point as to whether or not an option clause in a lease providing for an extension of credit to an original lessee is, as a matter of law, personal and non-assignable, the authorities are in conflict. See Menger v. Ward, 87 Tex. 622, 30 S.W. 853; D.C. Hardy Implement Co. v. South Bend Iron Works, 129 Mo. 222, 31 S.W. 599; Weidenbaum v. Raphael, 83 N.J. Eq. 17, 90 A. 683; cf. Montgomery v. De Picot, 153 Cal. 509, 96 P. 305; Annotation 38 A.L.R. 1173, et seq. and 138 A.L.R. 217; 51 C.J.S., Landlord and Tenant, § 85, pp. 645, 646. And compare Frissell v. Nichols, supra [94 Fla. 403, 114 So. 434] wherein, while it was not expressly determined whether or not such a provision in the lease would in every instance make such an option clause personal, it was indicated by this court that the issue might be one of fact; that is, that there might be a "showing to the contrary" by evidence such as that recited by the trial court in the instant case to the effect that the contract between the original parties did not, in fact, involve a relation of personal confidence and reliance on the solvency and pecuniary credit of the lessee.
What should be the rule in Florida on this precise issue need not herein be decided; for it has been uniformly held in every jurisdiction where the question has arisen, that "even though the purchaser was to be extended a credit, the option may be enforced by an assignee who offers to pay cash or in advance." 32 Am.Jur., Landlord and Tenant, Sec. 302, p. 282; In re Niagara Radiator Co., D.C., 164 F. 102, and cases cited; Jenkins v. Columbia Land & Improvement Co., 13 Wash. 502, 43 P. 328; Annotation 38 A.L.R. 1175. This latter principle would seem to govern in the present case since, as appears from the record, the only relief ultimately accorded the appellee in the court below was a decree permitting his exercise of the option to purchase the property upon payment of the full cash price; and there is no question raised in this appeal of the right of the appellee to exercise his option upon other terms.
As to the second point raised by the appellant, that the full purchase price of the property was not tendered until after the lease had expired and that consequently the tender came too late, it should be noted *687 that the option provision provided only that payment for the property was to be made "at the time of closing following the exercise of the option" within the term of the lease. It is apparent from the facts recited by the trial court in the final decree that at no time throughout the entire transaction between the parties to this cause did the lessor evidence his dissatisfaction with the tender made by the appellee on the ground that the whole purchase price had not been tendered but based his refusal squarely on the grounds that "he didn't want to sell the property" and that the cashier's checks tendered for the down payment did not constitute legal tender, asserting for the first time on the day before the expiration of the lease that the option in question was simply "not a type of option to purchase which passes upon the assignment of a lease." Under these circumstances it seems plain that it would have been impossible to set a certain "time of closing" when payment would become due under the terms of the contract.
But aside from this uncertainty, and assuming for the sake of argument that an actual legal tender of the whole purchase price as well as an offer or request to exercise the option would ordinarily have been required within the life of the lease, the application of the doctrine of estoppel by the trial court, upon the facts which were before it, appears to us to be in accord with sound reasoning, equity and justice.
In a case very similar to the case at bar, where a seller failed to assert the alleged personal nature of the contract at the time he declined an assignee's offer of performance and tender of his note, it was held that estoppel precluded the assertion of a defense on that ground in a suit by the assignee seeking specific performance. Montgomery v. De Picot, supra. While it is true that in the case referred to a statute required that the person to whom a tender is made must at the time specify any objection he may have to its sufficiency, otherwise he will be deemed to have waived it, we think that the statute was simply an expression or illustration of a long-standing equitable principle to the effect that even where time is of the essence in a contract, specific performance will not be denied because of a delay in perfecting tender where the failure can be attributed to acts or omissions of the party to whom tender is due. Pomeroy on Eq.Juris., 5th ed., Vol. 4, Sec. 1407(2). See also Dickson v. Ridge Realty Co., 141 Fla. 807, 194 So. 241; Board of Public Instruction v. McDonald, 143 Fla. 377, 196 So. 859.
The decree appealed from should be affirmed.
It is so ordered.
MATHEWS, C.J., and TERRELL and DREW, JJ., concur.