104 So.2d 365 (1958)
Beatrice Maud SISCO, Appellant,
v.
Leo ROTENBERG, Appellee
Supreme Court of Florida.
July 9, 1958.
*366 Willes & Bittan, Fort Pierce, and Messer & Willis, Tallahassee, for appellant.
T.B. Ellis, Jr., Fort Pierce, Charles B. Adams, West Palm Beach, and Leonard Pepper, Tallahassee, for appellee.
O'CONNELL, Justice.
The principal question involved in this appeal as stated by appellant is as follows:
"When a lease of realty for a specified term of five years also provides that the lessor agrees `during the tenure of the lease' to sell to the lessee the leased property for a named cash price and also provides that the lessee has the option to renew the lease for a period of five years `on the same terms and conditions', does the exercise of the option to renew also extend into the extended term the right of the lessee to purchase the leased premises for the price specified?"
Appellant, defendant below, and appellee, plaintiff below, entered into a lease agreement which provided for a basic term of five (5) years. In addition, the last two paragraphs of the lease provided:
"The Lessor agrees, during the tenure of this Lease, to sell to the Lessee, the foregoing described real estate with appurtenances thereto appertaining, for a cash purchase price of Twenty Thousand Dollars ($20,000.00).
"It Is Agreed that the Lessee shall have an option to renew this Lease for a period of five (5) years on the same terms and conditions providing the said Lessee makes this request in writing to the Lessor on or before October 2nd, 1954."
Plaintiff went into and remained in possession for the five year term. Prior to the expiration of the five year term the plaintiff exercised his option to renew the lease for a period of five years. No new lease was executed, and no different terms were agreed upon. The plaintiff continued in possession of the premises as before.
During the first year of the renewal or extension of the lease, the plaintiff's attorney, on August 26, 1955, wrote a letter to the defendant giving her formal notice that the plaintiff was exercising his option to purchase the property for $20,000 under the provision of the lease dated January 2, 1950. The letter advised that the plaintiff was willing to and offered to perform on his part in conformity with the provisions of the agreement. The letter further stated:
"Mr. Rotenberg further advises that he has previously on August 11, 1955, informed you of his desire to exercise his right to purchase said property, and that you have stated orally to him that you are unwilling to do so. We are instructed to inform you that in the event you refuse to go through with the sale of the said property, such action as may be necessary will be instituted."
Plaintiff thereafter filed his complaint on October 5, 1955 seeking a decree of specific performance of the option to purchase. Defendant moved to dismiss the complaint on the ground it failed to state a cause of action, which motion was denied.
Defendant's answer admitted the factual allegations of the complaint but denied that the plaintiff "at any time during the original tenure of said Lease * * * notified the *367 Defendant in writing of his desire to exercise the option granted in said Lease to purchase the real estate therein described for a cash purchase price of $20,000.00." She admitted that she refused to sell the land on those conditions because the plaintiff failed to exercise the option to purchase during the original tenure and that "the option to purchase did not extend to the renewal period of said Lease." Defendant also alleged that the plaintiff "has failed at any time to tender to this Defendant the amount of $20,000, being the cash purchase price."
In his final decree, the chancellor stated:
"* * * Defendant contended that, because the plaintiff failed to exercise the option to purchase during the original term of the lease, plaintiff has forfeited his right to purchase.
"The general rule of law is contrary to this position assumed by the defendant. Thus it is stated, 51 C.J.S. Landlord and Tenant § 84, p. 643,
"`During the renewed or extended term. Where the lease confers the right to purchase at any time during the term, it is generally held that it may be exercised during an extended or renewed term, acquired under an option in the lease for an extension or renewal on the terms and conditions of the original lease.' * * *
"See also 32 Am.Jur., Sec. 308, pp. 285, 286; annotation 37 A.L.R. commencing page 1245; and 163 A.L.R. p. 706 and also annotation commencing page 711.
"Defendant admits that she received the notice exercising the option to purchase and that she refused to sell the land.
"The defendant further contends that the plaintiff has failed to tender at any time in cash the twenty thousand dollar purchase price, and that such tender was a prerequisite condition.
"Plaintiff insists that, having exercised the option and having offered to perform, he was not required to make a tender in cash when the defendant had refused to go ahead with the sale. Under the circumstances of this case, this Court concurs in this view. See Taylor v. Mathews, 53 Fla. 776, 44 So. 146, Orlando Realty Board Bldg. Corporation v. Hilpert, 93 Fla. 954, 113 So. 100; and Martin v. Albee, 93 Fla. 941, 113 So. 415. Nor does equity require one to do useless or futile acts to obtain relief to which one is otherwise entitled. Standard Lumber Co. v. Florida Industrial Co., 106 Fla. 884, 141 So. 729.
"So the case here is one where there is an unambiguous option to renew provision and option to purchase provision contained in the lease agreement. The option to renew expressly provides without exception or qualification that the extended period shall be on the same terms and conditions as under the original term. The option to purchase was one of the specific parts of the lease agreement. The renewal provision has been exercised and plaintiff is in possession under it. There is the refusal on the part of the defendant to perform, although plaintiff gave notice as required, exercised his option to purchase, and offered to perform. An actual cash tender would have been futile; there was nothing else the plaintiff could do; the only alternative plaintiff had was the bringing of the suit. There was no delay; suit was instituted on October 5, 1955, a little over a month after notice exercising option to purchase. The option to purchase was exercised in the first year of the renewal period.
"When the case is considered in its entirety, under the evidence, plaintiff has met the burden of proof required of cases of this kind and is therefore entitled to specific performance. * *"
*368 In addition to the question above stated defendant also contends that the option to purchase was not properly exercised because the plaintiff never actually tendered the purchase price.
Defendant argues that it is clear and undisputed that the original tenure prescribed in the lease expired on January 2, 1955, some seven months prior to plaintiff's purported exercise of the option to purchase. She acknowledges that authority for the chancellor's ruling may be found, but asserts that in some jurisdictions a contrary rule exists, and that since this Court has never ruled thereon it is free to adopt an interpretation calling for strict construction of options to purchase real estate for a fixed sum. Defendant asserts that this Court's ruling should be that if one is to gain such an advantage over a period as long as ten years, as in this case, he should be held under a duty to cause written instruments intended to have such an effect contain language clearly spelling out that intent.
In support of this assertion, defendant argues that, like all written contracts, the lease should bear the construction which accords with the intent expressed by the parties. She says that the conditions and circumstances surrounding the parties and the objects to be obtained should be considered and that where a provision is in any way uncertain or ambiguous it should be construed against him for whose benefit the provision was inserted.
Defendant asserts, with no citation of supporting authority, that the lease was in effect two separate contracts between the parties, one a demise of the premises for five years, subject to being extended for five years, and the other a contract granting an option for a limited time to purchase the realty for a stated price.
Defendant says that in substance the chancellor has held that the plaintiff's exercise of his option to renew brought about a new contract containing the identical provisions of the old contract, and that thus it would seem to afford him the right to renew the lease for successive five year periods indefinitely. This argument of course must fail, since most courts have taken the view a covenant to renew is satisfied by one renewal thereof, due to their disfavor of perpetuities and perpetual leases. Annotation 1952, 31 A.L.R.2d 607; 4 Thompson on Real Property, Sec. 1263 (perm. ed.); 51 C.J.S. Landlord & Tenant § 61; 32 Am.Jur., Landlord & Tenant, Sec. 968.
Defendant argues that the authorities cited by the chancellor are conflicting and are in accord only on the one point that the intention of the parties to be gathered from the lease itself is the determining factor. Consequently, defendant calls attention to what she labels the peculiarities of Florida real estate transactions and the circumstances of the time in which the lease was initially executed. She refers to the steady increase of land values in this state and argues that because of that factor she surely did not intend to be bound by the terms of her lease to a fixed price over a large number of years. We note that the record is silent as to what the market value of the subject realty was, or is, and it is our opinion that, as contended by the plaintiff, the intention of the parties is to be obtained from the unambiguous terms of the contract and not by what may have existed in the minds of the parties but was not reflected in the written lease. This Court has so held on innumerable occasions and it is our opinion here that the chancellor was correct in stating that in this case the options to renew and to purchase are unambiguous.
Since this Court has heretofore never ruled upon the principal question before us, we must resort to other jurisdictions for enlightenment. In doing so we find that the authorities cited by the chancellor have been often referred to in modern cases on the point.
Both 51 C.J.S. Landlord & Tenant § 84 and 32 Am.Jur., Landlord & Tenant, Sec. *369 308, cited by the chancellor, state the general rule to be that where the lease confers the right to purchase at any time during the term, it may be exercised during an extended or renewed term acquired under an option in the lease for an extension or renewal.
The chancellor also referred to annotations in 37 and 163 A.L.R., the latter being supplemental to the former.
In the annotations in 37 A.L.R. 1245, the following appears:
"* * * The question considered in the reported case * * * as to whether an extension of a lease operates to extend an option to purchase contained in the original lease, is one as to which there have been a variety of conclusions.
"The decisions appear to support the following deductions:
"1. That where the original lease, or agreement to lease, provides for an extension of the term, at the tenant's election, an option therein contained to purchase during the term is likewise extended. * * *
"* * * * * *
"2. That where the tenancy is continued, not by virtue of any provision in the original lease, but by subsequent agreement, the continuance of the option depends upon the construction to be placed upon that agreement.
"If it merely continues the tenancy, although upon the terms fixed by the original lease, it will not extend an option to purchase contained in the original lease, such option being a collateral, independent contract. * * *
"3. An option to purchase during the term cannot be exercised after its expiration by a tenant holding over * * *.
"This rule, however, is subject to an exception where time is held to be not of the essence of the option. * *"
The annotation in 163 A.L.R. 711 (1946), compiled some twenty-two years after that in 37 A.L.R., states that the question cannot be answered by a simple yes or no, but that the one rule upon which there seemed to be general agreement was that the intention of the parties to be gathered from the lease itself was the determining factor. It is commented, however, that such rule is not particularly helpful since it is this intention about which the parties usually disagree. The annotation, on page 712, states:
"* * * More useful rules can be found in the deductions from the cases in the earlier annotation [37 A.L.R. 145] although it must be conceded that these deductions are not supported by all the later cases. * * *"
The deductions previously set out in the earlier annotation, copied above, are then listed. Recent cases, or cases subsequent to those noted in the earlier annotation, are noted and in particular it is noted that a view opposite to the purported general rule had been followed in Pennsylvania; the case of Pettit v. Tourison, 1925, 283 Pa. 529, 129 A. 587, 39 A.L.R. 1106 is cited as evidence of such opposite result.
The facts of the instant case render unnecessary any consideration of the second or third general deductions referred to in the two annotations above cited.
Reasoning for what appears to be the general rule, paraphrased in the first deduction in the annotations abovementioned, is set forth in the Maryland Court of Appeals in Schaeffer v. Bilger, 1946, 186 Md. 1, 45 A.2d 775, 779, 163 A.L.R. 706. In that case the lease contained renewal and purchase options comparable in part to those of the instant case. Privilege to purchase was given the lessee "at any time during the period of the term hereby created." The lessee was given the right to extend the basic three year term "for another term of five years * * * subject to the aforegoing covenants and conditions otherwise herein contained." The tenant gave proper *370 notice of his desire to extend the term of five years and during such extension he gave notice of his desire to purchase the leased property. The court stated the problem was difficult and had resulted in conflicting decisions and noted that many decisions turned upon the narrow question whether the lease was to be extended or whether the term was to be extended or whether a new lease was to be executed. The court commented upon the English cases and found that their theory was that a lease is one contract and an option to purchase another and that such theory was apparently followed by the Pennsylvania court in Pettit v. Tourison, supra.
The Maryland court concluded that it felt the intention of the parties, as gathered from the lease, was clearly that the option to purchase should continue during the extended term. The court said, 45 A.2d on page 779:
"* * * The extension option says that such extended term shall be `subject to the aforegoing covenants and conditions otherwise herein contained.' The option to purchase was not one of the `aforegoing covenants' but it was one of the `conditions otherwise herein contained' and it apparently was a very important one. It may well have been one of the chief considerations why the tenant entered into the lease, paid the rent and made the improvements he did. And this conclusion is strengthened, if it needs any strengthening, by the fact that the option to renew states that the tenant may extend the term hereby created for another term of five years and the option to purchase states that it can be exercised `at any time during the period of the term hereby created.' The term created was three years with the right to extend for five more, which made a term of eight years, which period, however, might be lessened at the pleasure of the lessee. * * * [T]he present tendency and, we think, the better rule, is to hold that where a lease with a right of renewal or extension contains an option to purchase, it will be considered as an indivisible contract. The option to purchase will go along with the term unless some contrary intention clearly appears and regardless of whether `the lease is renewed' or `the term is extended'."
Concerning the last statement quoted above, we are in accord with the plaintiff in this case that if any distinction may have been made in any other court as to "renewal" or "extension" of a lease, this Court will not consider such distinction. As we agreed in Leibowitz v. Christo, Fla. 1954, 75 So.2d 692, the distinction between the meaning of those two words when used in leases is too refined and theoretical to be real, as a matter of law, in practical affairs. Further, we have noticed in our research on this case that courts frequently speak of the question herein involved in relation to a lease as extended or renewed, using both terms.
The case of Pettit v. Tourison, supra, has often been cited as illustrative of the view opposite to the general view followed in Schaeffer v. Bilger, supra. In that case the Pennsylvania court held that the privilege of renewing the lease for a further term and the option given to purchase the property confer separate and distinct rights. The court, at 129 A. at pages 587-588, said:
"* * * The first [right to renew] has reference to a continuance of the tenancy; the latter confers upon the lessee the power to terminate the tenancy and to become the absolute owner of the property. The option to purchase is not an essential covenant of the lease, nor is it a term and condition of the demise. There are many covenants which are often found in leases which are independent and not essential parts of the demise, which, without express agreement to that effect, are not to be incorporated in renewals thereof, such as a covenant to renew or any covenant that has been fulfilled *371 and is not continuous. For example, the rule is well established that a lease containing a covenant to renew at expiration upon the same terms and conditions is fully carried out by one renewal without the insertion of another covenant to renew. * * *
"The option to purchase is an independent clause in the lease, giving the lessee the right to purchase the property within the time specified. * * * It may be treated as a part of the agreement, in so far as it describes the persons and the property, but it forms no part of the demise and was not necessary for the continuance of the tenancy. Under the language of the present lease the provision for renewal has reference to the continuance of the tenancy for a further period of five years, and the renewal operates only to continue the agreement as a lease. * * * Had the parties intended that the option to purchase was to be extended beyond the original term, it would have been easy to have employed apt language to express such an agreement by providing for the exercise of the option not only `during the term of this lease,' but during the renewal term. The lessee has not elected to exercise the right to purchase the demised premises; he has elected to continue the tenancy by the exercise of the renewal privilege, and insists that the provision for the renewal of the tenancy carried with it an extension of the right to purchase for a further term of 5 years. To sustain plaintiff's contention, the option to purchase would have to be treated as one of the terms of the lease relating to the continuance of the tenancy for which the privilege of renewal is given, or the provision conferring the right to purchase would have to be enlarged by reading into it a right to exercise the option during the renewal term. This cannot be done.
"A second reason for our conclusion is that the privilege given under the eleventh paragraph is `of renewing this lease.' To renew a lease means a leasing again of the premises * * *, or, in other words, it implies that another lease is to be executed. It is to be noted, however, that the option to purchase the property given in the fourteenth paragraph is `during the term of this lease.'"
As noted, the Maryland court in Schaeffer v. Bilger, supra preferred to follow what is considered to be both the present tendency and the better rule, such rule being that the contract be deemed indivisible. It felt the option to purchase clause may well have been one of the chief considerations for the tenant to enter into the lease. The Maryland court also refused to make any distinction as to renewal or extension, as apparently was made by the Pennsylvania court in Pettit.
It is interesting to note the comment of another Pennsylvania court made subsequent to the decision in Pettit, supra. In Atlantic Refining Co. v. Laskey, 1954, 89 Pa.Dist. & Co.R. 147, the court pointed out that the rule in its jurisdiction was that renewing a lease did not renew or extend an option to purchase, but added that in such courts a distinction was made between "renewing or releasing" and "extending" in that an option to purchase does extend with an "extension". The court felt this was not contradictory to the rule in Pettit v. Tourison, supra, since that decision did recognize the validity of an election to exercise an option to purchase where the election is made within the term of the lease. Further, the court said that to say a purchase option does not extend with an "extension" of a lease is contrary to the weight of authority. In this case, however, the lease provided that the purchase option was "to be effective during the continuance of said lease as extended hereby."
The theory of the Pennsylvania court in Pettit, supra, has been followed in point *372 in several jurisdictions. The New Jersey court, in Andreula v. Slovak Gymnastic Union Sokal Assembly No. 223, 1947, 140 N.J. Eq. 171, 53 A.2d 191, 193, said an option to purchase contained in a written lease cannot be exercised after expiration of the written lease by a tenant holding over
"since it is a collateral contract, independent of the lease. 32 Am.Jur., Landlord & Tenant, Section 308 * * * We hold that `an option of purchase is not to be regarded as a provision incident to the relation of landlord and tenant, but is a matter collateral to and independent of it.' Warrington, L.J., speaking in Sherwood v. Tucker, English Court of Appeals, 2 Chancery 440 (1924), 37 A.L.R. 1239."
It is to be noted, however, that in this case the court was speaking of a tenant holding over.
In Wright v. Barclay, 1949, 151 Neb. 94, 36 N.W.2d 645, the court said that an option to purchase is not one of the terms of the tenancy itself. Again, this court was referring to a case wherein the tenant was holding over, and said the option, being a provision outside the relations between landlords and tenants, was not one of the terms of the original tenancy which would be incorporated by a tenant holding over. The court said the option should be strictly construed and in effect said that since the exercise of the option destroys the tenancy it should not be deemed to be a term of the tenancy itself. The court, as in Pettit, supra, said that if the parties had wanted the option to extend to a tenant holding over they could have so stipulated in apt language, but that such intention should not be implied.
The lease in Carter v. Frakes, 1946, 303 Ky. 244, 197 S.W.2d 436, 438, permitted by express terms the lessee to exercise an option to purchase "at any time up to June 4, 1942," the expiration date of the five year term. The lease also contained an option to renew. It was held by the Kentucky court that the options were severable and that the parties could have utilized apt language to include the option to purchase in the renewed lease. The court ruled the option did not extend beyond the original term. This same court, however, in Lexington Flying Service v. Anderson's Ex's, Ky. 1951, 239 S.W.2d 945, held that the option to purchase could be exercised during the extended or renewed term. It distinguished the earlier case of Carter v. Frakes, supra, by saying that in that case a definite date was set in which to exercise the option.
Other relatively recent cases support the contention that the general rule is that unless a contrary intention is expressed, an option to purchase is extended into an extension or renewal of the original term obtained under a provision contained in the lease. Many of these cases cite as authority the previously noted annotations in 37 and 163 A.L.R.
The federal court in Moiger v. Johnson, 1950, 86 U.S.App.D.C. 219, 180 F.2d 777 held that the effect of an extension of a lease was to extend or continue all terms of the lease, including an option to purchase.
The lease in Didriksen v. Havens, 1949, 136 Conn. 41, 68 A.2d 163, contained an option to renew for one year, at the same terms and conditions, together with an option to purchase. The court found that the plaintiff had made repairs and improvements in reliance upon the option to purchase and said the effect in law of the extension was to carry the option forward. The court ruled that the option to purchase was indivisible and that if the lease failed, it failed, and if the option was exercised, the lease terminated. Consequently, the court concluded, the parties must have intended that the option to purchase be extended also.
In Ardito v. Howell, 1947, 29 Del. Ch. 467, 51 A.2d 859, the court asserted that the problem was difficult and that inconsistent results had been reached. It refused *373 to determine whether the lease was "extended" or "renewed" or even whether the purchase option was part of a "divisible" contract or was collateral, but criticised such an approach, which it acknowledged was used by many courts, as placing too much emphasis upon legal concepts. The court stated that the preferable practice would be to ascertain the intent to be resolved in light of the principles applicable to such a problem. The court's decision was that the word "term" should be interpreted to include the renewal or extension periods and the better policy was that the purchase option extend unless a contrary intention clearly appeared. In this case, however, the court found that the plaintiff had paid an independent consideration for the option to purchase.
While involving a tenant holding over, the court in Gressitt v. Anderson, 1947, 187 Md. 586, 51 A.2d 159, held that the option to purchase was part of an indivisible contract and went along with the lease unless an intent to the contrary was clearly shown. In this case the court found that the conditions surrounding the parties were sufficient to imply that the option should be extended to the hold over tenant.
The original lease in O'Brien v. Hurley, 1950, 325 Mass. 249, 90 N.E.2d 335, was for only two years and the renewal clause permitted the lessee to renew for 18 years. Irrespective of the detrimental effect such a prolonged period may have had upon the owner, the court ruled that the option to purchase was extended into the 18 year renewal term.
Again, in Hindu Incense Mfg. Co. v. MacKenzie, 1949, 403 Ill. 390, 86 N.E.2d 214, it was held that the option to purchase was not collateral to but was an integral part of the lease. The court said the contract was indivisible since the purchase option was one of the terms of the lease and the renewal clause called for renewal upon the same terms as in the original lease.
It was the reasoning of the court in Starr v. Holck, 1947, 318 Mich. 452, 28 N.W.2d 289, 172 A.L.R. 413, holding that the purchase option extends into the renewal or extension of the lease, that a lease for one period with option to renew for another period was a present demise for a period equal to the sum of those two periods, as did the court in Schaeffer v. Bilger, supra.
Other cases verifying the purported general rule are Chosewood v. Byars, 1947, 201 Ga. 805, 41 S.E.2d 530; Balsham v. Koffler, 1950, 8 N.J. Super. 48, 73 A.2d 272; First Citizens Bank & Trust Co. v. Frazelle, 1946, 226 N.C. 724, 40 S.E.2d 367; Moore v. Maes, 1949, 214 S.C. 274, 52 S.E.2d 204. Also see the case of Superior Portland Cement v. Pacific Coast Cement Co., 1949, 33 Wash.2d 169, 205 P.2d 597.
In 1 Rasch, Landlord & Tenant & Summary Proceedings, Sec. 623, p. 520 (1950) it is said that when a lease is renewed by virtue of a renewal option, the "effect is as if original lease had contained a term for the renewal period as well as the original term" and the parties hold by virtue of the original lease; the option to purchase is therefore part of the renewed lease. And in 1 American Law of Property, Sec. 3.83, p. 361 it is said that "also, where the lease provides for an option for renewal or extension, the purchase option is considered an indivisible part of the lease and continues during renewal or extension period." See also 3 Thompson on Real Property, Sec. 1329 (perm. ed.) and the previously noted provisions in 51 C.J.S. Landlord and Tenant § 84 and 32 Am. Jur., Landlord & Tenant, Sec. 308.
While this Court has never ruled upon this precise question heretofore, there has been before us one case which involved a similar factual situation and in which, the plaintiff asserts, this Court gave tacit approval of the rule that an option to purchase is extended into the extended term gained by exercise of an option to renew. Rosello v. Hayden, Fla. 1955, 79 So.2d 682, *374 683. Defendant argues correctly that this point was not raised in that case in the trial court nor on appeal and that the opinion as reported does not reveal whether or not there was in the lease a specific provision extending the option to purchase into the new term.
We have examined the record filed with this Court in Rosello v. Hayden, supra. There was a renewal clause therein giving the lessee the right to renew at the expiration of the original one year term for an additional five years. The clause, in that case, unlike the one in the instant case, did not provide that the renewal be on the same terms and conditions as the original lease. The option to purchase gave the lessee the right to purchase "at any time during the life of this Lease." There was no clause in the lease specifically extending the purchase option. The lessee assigned the lease to another person and the point on appeal to this Court was whether the assignee could enforce the option to purchase during the additional five year term. This Court ruled in favor of the assignee and thus, in effect, held that the option to purchase extended into the extended term obtained through the exercise of the option to renew. While the point now before us was not specifically raised it was a question so fundamental to the decision in the case that it had to have been answered in the same manner as we have decided it here.
We are favorably impressed with what clearly appears to be the majority rule  the option to purchase does extend into the renewal or extension period obtained by the exercise of an option to renew. We find that the minority rule to the contrary is based upon distinctions in the meanings of words which we do not choose to make, or upon the theory that the purchase option is an independent covenant divisible from the main contract, or lease. It is our holding that such covenant is not collateral, especially where, as here, there is no showing that an independent consideration was paid therefor. This is consistent with our holding that covenants are always considered dependent unless a contrary intention appears. Sandford v. Cloud, 1880, 17 Fla. 532, 552.
Consequently, we hereby adopt as ours the majority rule and therefore approve the ruling of the trial court on that point.
There remains for consideration defendant's assertion that there was not sufficient exercise of the option to purchase made by the plaintiff since he never actually tendered the purchase price.
According to the letter written by plaintiff's attorney to the defendant, plaintiff had orally informed defendant that he wished to purchase the subject property but defendant stated to him that she was unwilling to sell to him. Plaintiff's letter informed her that he stood willing to perform in conformity with the option clause and offered to do so. Defendant argues that it is elementary that in an action to compel specific performance of an alleged contract involving the payment of money there must be a valid tender of such money as a condition precedent to the enforcement of the contract. She also contends that not only should plaintiff have tendered the purchase price to her but he then should have tendered the amount into court. The plaintiff did neither.
Defendant cites as support of her argument our decisions in Kreiss Potassium Phosphate Co. v. Knight, 1929, 98 Fla. 1004, 124 So. 751; Gus Bath v. Lightbown, 1931, 101 Fla. 1205, 133 So. 85, 135 So. 300; Matthews v. Lindsay, 1884, 20 Fla. 962; Spann v. Baltzell, 1847, 1 Fla. 301, 46 Am. Dec. 346; and Forcheimer v. Holly, 1872, 14 Fla. 239. The first two of these cited cases involve pleadings setting up tender of money as a defense to a suit in the foreclosure of a mortgage, and the last three cases all involve actions on promissory notes. None involve an option to purchase leased realty.
It is said in 32 Am.Jur., Landlord & Tenant, Sec. 307, that in some cases tender *375 is held to be necessary after the exercise of a purchase option while in others it is not but that where notice is given and there is a refusal to convey, there is no necessity of making tender. In 1 American Law of Property, Sec. 3.82, p. 360, it is said:
"Whether the option requires a tender of payment at the time of its exercise by the lessee is a question of construction of the instrument in each case, but tender would seem unnecessary unless the lease so provides, for ordinarily payment is expected only at the time of delivery of the deed."
The Connecticut court, in Didriksen v. Havens, 136 Conn. 41, 68 A.2d 163, supra, ruled that the lessee did not need to make formal tender where, when he notified the lessor of his desire to exercise his option to purchase, the lessor informed him there was available to him no such option.
This Court did not rule on this question in Rosello v. Hayden, supra, but merely said that assuming for the sake of argument tender of the entire purchase price may have been required, the vendor was estopped under the circumstances of the case from demanding such.
It was the holding of the chancellor in his decree that equity does not require one to do useless or futile acts to obtain relief to which he is otherwise entitled, citing Standard Lumber Co. v. Florida Industrial Co., 1932, 106 Fla. 884, 141 So. 729, where this Court held that tender of a deed was unnecessary where the purchaser had already given notice of its refusal to perform its obligations. This doctrine has merit. In addition, we find sufficient support for the chancellor's ruling on this point in the other authorities cited by him in his final decree. Also see Shouse v. Doane, 1897, 39 Fla. 95, 21 So. 807 and Walker v. Close, 1929, 98 Fla. 1103, 125 So. 521, 126 So. 289.
Under the circumstances of this case, where the lessor notified the lessee she did not intend to convey, it was unnecessary for the lessee to make actual tender of the purchase price and the lessee made sufficient tender by merely notifying the lessor he was ready, willing and able to pay and offering to pay the purchase price.
No reversible error having been shown, the decree of the lower court is hereby affirmed.
THOMAS, Acting C.J., and HOBSON, DREW and THORNAL, JJ., concur.