STANDARD LUMBER COMPANY, a corporation, ADDISON L. GARDNER, JR., and EDWARD J. QUINN, individually and as Trustees, and ANNA L. SEARS, *Appellants,* vs. FLORIDA INDUSTRIAL COMPANY, a corporation, and THE BARNETT NATIONAL BANK OF JACKSONVILLE, as Trustee, *Appellees.*

141 So. 729.

Opinion filed May 11, 1932.

Petition for rehearing granted July 6, 1932.
Decrees reaffirmed October 3, 1932.

*Kay, Adams, Ragland & Kurz,* for Appellants;
*E. J. L'Engle* and *J. W. Shands,* for Appellees.

DAVIS, J.—This is an appeal from a final decree ordering the sale of the alleged equity of the appellant, Standard Lumber Company, in a large tract of timber in Lee County for alleged non payment of the remainder of the purchase price thereof as promised by appellant as purchaser. The amount of the decree was for an aggregate of $2,280,307.12, and the enforcement of the agreement on vendee's part was ordered to carry out performance of the terms of a written timber purchase contract shown to have been entered into between Standard Lumber Company, the appellant on one side, and the Florida Industrial Company and Consolidated Land Company on the other. The sale as required by the final decree was subsequently executed and confirmed by the Chancellor.

On the issues made by a voluminous answer, to which was filed an equally voluminous replication, the case was

tried before the Chancellor himself in open Court. Practically two weeks were thus consumed in the taking of testimony and in the proceedings at the trial.

The case is here on an appeal from the final decree. That decree found that the equities were with the complainants and against the defendants, that the evidence adduced failed to sustain the allegations contained in the answer and counter-claim of the defendant Standard Lumber Company, and denied to that company the affirmative relief prayed for by its answer and counter-claim. An appeal was also taken to the decree confirming the Master's sale which was held pursuant to the final decree, but no particular error is assigned thereon independent of those argued with respect to the final decree.

By the bill, the Florida Industrial Company and its pledgee, The Barnett National Bank, sought to have performed the timber contract hereinbefore mentioned. The contract so sued on was made a part of the bill of complaint and according to its provisions, required appellant, Standard Lumber Company, to purchase on the terms of the contract, and pay for, a represented minimum of 550,-000,000 feet of timber scattered over 275,000 acres of land in Lee and Hendry Counties.

The bill alleged the making of the contract; the Standard Lumber Company's conveyance to the complainant vendor of tracts of Florida lands valued at $831,000.00 which were accepted as a credit on the purchase price; the giving by the vendee of notes for the remainder of the purchase price; that the purchase was made subject to an option to demand the cruising of the timber; that the option to demand a cruise of the timber was exercised and that such cruise was subsequently made; that the cruise as made showed an excess of over 2,000 feet per acre; that after the cruise was reported that the timber had been partially cut by the vendee and partial payments made by it on its notes; that

subsequently there was a default in the payment of certain other notes, interest and taxes when due; that the Standard Lumber Company had announced abandonment of the contract on its part; that by reason of this fact the complainant had elected to accelerate the maturity of the remaining notes and accordingly was claiming an alleged balance due of more than $2,000,000.00 on the purchase price. Appropriate relief by way of accounting and for enforcement of the contract was prayed.

Demurrers were interposed to the bill and over-ruled, after which separate answers were filed by the several defendants, including the Standard Lumber Company.

The answer of the Standard Lumber Company set up by way of counter-claim for affirmative relief that the vendor had caused the vendee to enter into the contract by fraudulent representations and concealments as to the quantity of timber on the tract, and as to what cruises had been made to ascertain the quantity and prayed for cancellation and rescission. It also averred that in various ways the vendor had represented and led the vendee to believe that the timber aggregated 550,000,000 feet and would cut better than 2,000 feet per acre, considering the tract as a whole; that the timber had been cruised by several expert cruisers, each of whom had found on the tract more than 2,000 feet to the acre on the tract as a whole; that the areas purchased under the contract were so great, and the character of the timber so diversified, that the vendee in trading for it had to rely, and did rely, on the alleged false representations of the vendor; that the vendee, supposing the quantity of timber to be on the tract as represented by vendor, forthwith erected a saw mill plant as provided in the contract at a cost of a million and a half dollars, and began operating it; that, however, after several months operation of this plant, vendee began to discover a very serious shortage in the timber; that this shortage ran from 35 per cent to 50

per cent. of the amount of timber that had been represented; that after this the vendee learned that the cruises which had been represented as having been made before the contract was entered into had not been made as alleged; that subsequent to the execution of the contract, that the cruises demanded by the vendee had been so fraudulently manipulated through the activities of the vendor's cruiser so as to show an increase in the amount of timber above what actually was on the land; that by reason of all this that vendee was kept in the dark as to the true status of the timbered land it was buying, during which time it built its saw mill plant and continued to make payments to the vendee on the contract at the rate of $21,000.00 per month; that accordingly the contract should be cancelled or rescinded and defendant be decreed to have a lien for its advancement under it.

The vendor-complainant filed a lengthy replication denying in substance the charges of misrepresentations contained in the vendee's answer. It also asserted the further defense that the contract carried a clause which estopped and precluded the vendee from asserting any misrepresentations as to the quantity of the timber. This clause was as follows:

"The vendor has not made and does not make any representations or covenants regarding the quantity, quality or value of the timber covered hereby or any part thereof, nor the logging conditions in connection therewith, nor any other representations or covenants whatsoever relative thereto except those specifically set forth in this agreement, the purchaser having already made such examination as satisfied it regarding all matters (except title matters) connected with this agreement and relying solely upon such examination."

The replication further set up that the vendee, long before it ceased cutting the timber, had acquired full knowledge of every fact and circumstance that it was attempt-

ing to plead in avoidance of the timber purchase contract, but took no action in regard thereto and thereby waived its right to complain thereof.

The amount of the decree was based upon the minimum purchase price stated in the contract, eliminating the increased amounts which would have been payable as the result of the joint timber cruise provided for in the contract to be made at the option of the vendee. This the appellee contends makes unnecessary any consideration of the charges of fraud the vendee makes with reference to the manner in which that cruise was carried out.

Appellant first contends that the timber contract sued on conveyed to the Standard Lumber Company no equitable title to the uncut timber, or other legal interest therein, such as would sustain appellee's bill, and that therefore the appellant's demurrer thereto should have been sustained. To support its argument, appellant cites the case of Prescott v. J. S. Betts Co., 81 Fla. 538, 88 Sou. Rep. 385, wherein it was held that an instrument in writing under seal purporting to convey all the timber of certain description on certain lands under certain conditions which required the payment of periodical sums of money before the grantee should have the right to cut the timber would be construed to be a license to the grantee to enter and cut timber upon payment of the consideration named, and that payment was a condition precedent to the passing of title to the timber. That case was a suit at law in replevin. The contract involved was materially different from the one exhibited in this case.

The suit here, furthermore, is one in equity to require the Standard Lumber Company to perform its contract by making its agreed payments under it. While a judicial sale of the property may be ordered for the purpose of enforcing such agreed payment a lien is not indispensably necessary to support a decree for such sale, and if it were,

a lien does in equity exist under the contract for the unpaid purchase price shown to have become due by the vendee under the vendor's contract to convey.

Here the contract involved is one by which *in terms* one of the parties as vendor agreed to sell and convey to the other as purchaser, and the purchaser agreed to purchase from the vendor, the timber described and referred to in the contract, for a definite consideration, and upon certain terms and conditions. By that contract the purchaser specifically agreed to pay the vendor "as the purchase price" for said timber, certain amounts in and by the contract stipulated and agreed to be paid. The contract was of much broader import than a mere agreement permitting the Standard Lumber Company to enter upon and cut timber upon certain considerations. On the contrary, it entitled the purchaser to demand and procure deeds to the timber purchased, and contemplated extensive uses of vendor's lands for sawmill purposes and for the purpose of having the contractual intent otherwise carried out.

Such a contract as here shown can only be construed as one creating the relation of vendor and vendee. That being so, the vendee under its terms is regarded as the beneficial owner of the timber, even though it has not paid the whole purchase price for it, while the vendor holds the title thereof as trustee to be conveyed to the vendee when the terms of the contract are complied with. Aycock Brothers v. First National Bank of Dothan, 54 Fla. 604, 45 Sou. Rep. 501; Insurance Company of North America v. Erickson, 50 Fla. 419, 39 Sou. Rep. 495, 2 L. R. A. (N. S.) 512, 111 Am. St. Rep. 121, 7 Ann. Cas. 495; Felt v. Morse, 80 Fla. 154, 85 Sou. Rep. 656; Miami Bond & Mortgage Co. vs. Bell, 101 Fla. 1291, 133 Sou. Rep. 547.

That both parties were and are obligated in many particulars by the contract, is obvious from an inspection of it.

So the contention that the agreement sought to be enforced lacked mutuality, was properly over-ruled.

So far as the principle of mutuality is involved as a prerequisite to the maintenance of the suit, it is mutuality of remedy in equity at the time of the filing of the bill that is required, and not a mutuality in the terms of the contract when the contract was made. Equity will only refuse relief in the nature of specific performance of a contract in cases where it finds that in granting relief to the complainant, the defendant, without fault on his part, will be left thereby to turn to a remedy at law only in his own behalf. Vance vs. Roberts, 96 Fla. 379, 118 Sou. Rep. 205; Schmidt vs. Kibben, 100 Fla. 1684, 132 Sou. Rep. 194; Clark vs. Andrew, 11th Fed. (2nd) 958; Yale Investment Co. vs. Williams, decided at the present term.

The bill of complaint alleged part performance, and that thereafter the defendant, Standard Lumber Company, had expressly notified and advised complainants that it would no longer continue to pay its notes nor other sums due by it, or otherwise perform the contract on its part. This was a sufficient allegation to withstand a demurrer on the ground that performance of conditions precedent were not sufficiently alleged in the bill, because the foregoing allegation was made in addition to general allegations of non performance on defendant's part and performance by the complainants. Tender of a deed and notice of intention to take advantage of defendant's default was rendered unnecessary when the defendant, Standard Lumber Company, announced its determination to decline and refuse to further perform its obligations.

Equity does not require the doing of useless or unnecessary acts in order to enable one to obtain relief to which he is otherwise clearly entitled, and what is not required to be done, is not required to be alleged in a bill of complaint. Defendant's demurrer on this point was therefore properly

over-ruled. Booth v. Bobbitt, 94 Fla. 704, 114 Sou. Rep. 513; Martin v. Albee, 93 Fla. 941, 113 Sou. Rep. 415; Pomeroy on Specific Performance (3rd Ed.) Sec. 361, page 768.

The point as to mis-joinder and non-joinder of parties must likewise be held not to have been maintainable.

The Consolidated Land Company was shown by the bill to have conveyed all its interest in the timber in controversy to Florida Industrial Company prior to the institution of the suit. That company was therefore not a necessary party. Bigelow v. Stringfellow, 25 Fla. 366, 5 Sou. Rep. 816; Matheson v. Thompson, 20 Fla. 790. Neither were the pledgee and mortgagee of the vendors improperly joined as complainants, because it is proper to join together as parties plaintiff in such a suit all of those who are together the owners of the entire interest in the cause of action brought before the Court for adjudication. Roe v. Winter Haven Company, decided at the present term; 1 Wiltsie on Mortgage Foreclosure, 419.

We therefore hold that the Chancellor committed no error in over-ruling the defendant's demurrer to the complainant's bill of complaint and that defendants were properly required to file an answer.

Such required answer the defendant Standard Lumber Company undertook to make, not only by putting in issue certain of the material facts alleged in the complainant's bill of complaint, but by pleading in addition other facts by way of affirmative defense. In support of its prayer for affirmative relief it pleaded facts tending to show that the execution of the contract had been brought about by fraudulent misrepresentations entitling defendant to a rescission and cancellation of it. It also sought an accounting for, and recovery of, certain of the consideration payments which defendant alleged it had made before discovery of the alleged fraud. Nearly all of the material allegations

of the answer were denied. Where not denied they were expressly confessed and avoided, by complainant's special replication. The issue tried was therefore largely an issue of fact.

At the trial the Court excluded from defendant's evidence certain field books which had been used in making the cruise of the timber in accordance with the contract.

The books were offered, so counsel advised the Court, to show thereby that the cruise as made was neither correctly nor honestly made or reported. The Court ruled them out because the defendant's answer was not broad enough to include a charge of fraud relating to what had been done under the contract concerning the cruise. Thereupon defendant's counsel asked for leave to supply this deficiency in the pleadings by an amendment of Standard Lumber Company's answer setting up the alleged fraudulent cruise. Permission to amend was denied and the proffered evidence excluded.

Whether or not the Chancellor's ruling on this point was error, is immaterial as ground for reversal. The error, if any, was conclusively rendered harmless by the subsequent action of complainant in conceding to the defendant a reduction in the claim to the minimum contract price, which was all that such evidence would have been relevant to prove.

The cruise in question was the one which had been made under the contract. That it was required to have been honestly made in accordance with its provisions cannot be denied. But whether it was honestly and fairly made as insisted by the complainant, or fraudulently and dishonestly made in gross disregard of the contract, as insisted by defendant, concerned only one point,—the amount of the lien to be decreed.

The contract originally contemplated the payment of the sum of $3,690,000.00 as the purchase price of the timber.

This was to be the aggregate amount of the purchase price in the event that there should be no actual cruise to ascertain the true quantity as provided in another clause of the same writing. But it was also agreed in the contract that while Standard Lumber Company should have the right to demand an actual cruise to ascertain whether or not there was as much as 550,000,000 feet of timber, it was nevertheless to be bound in any event to pay a minimum of $3,575,000.00 should the cruise show 550,000,000 feet or less (regardless of how much less). If it showed 550,000,-000 feet or more (regardless of how much more), then the principal amount of the purchase price was to be increased at the rate of $6.50 for each one thousand feet of excess, but in no event was the ultimate total to exceed an aggregate of $4,000,000.00.

Thus it will be seen that the sole purpose of the cruise provided for, was to enable the purchaser (appellant here) to escape the payment of the otherwise applicable price of $3,690,000.00. This it could do by having a cruise made of the actual quantity, with consequent benefit of reduction in price should the cruise show a quantity more than 550,-000,000 feet, but less than enough to run the aggregate price on the agreed unit basis up to the stipulated price of $3,-690,000.00 payable without a cruise.

The result of any cruise made under the contract, whether honest or fraudulent, was therefore only material as evidence to establish the amount for which the purchaser had become obligated under the contract. Such subsequently made cruise was in nowise material as evidence to prove the alleged misrepresentations made to induce the consummation of the contract. Nor was it admissible for any purpose at the time it was offered, without an amendment of the defendant's answer.

This brings us to the error assigned on the Chancellor's

refusal to permit such an amendment of the answer to be made.

Ordinarily amendments of this kind should be allowed. Especially is this true where the amendment is necessary to promote the administration of justice by presenting for trial the real issue in controversy. The rule on the subject of amendments is extremely liberal, and more cases are reversed here for refusal to permit amendments to be made, than for the improvident allowance of them as not shown to have been justified.

But when an affirmative answer in the nature of a cross bill has been filed, and issue duly joined thereon, and the Chancellor has set a date for hearing and has entered upon a trial before himself in open Court of the issues made, and has set aside a portion of his available time for that purpose, and the hearing has substantially proceeded, the denial of an application by defendant to amend the answer so as to broaden the issues, will not be disturbed by an appellate Court in the absence of some clear showing of an abuse of discretion under the circumstances. Warren v. Warren, 73 Fla. 764, 75 Sou. Rep. 35 L. R. A. 1917E 490; Town of Punta Gorda v. Charlotte Realty Invest. Co., 93 Fla. 253, 111 Sou. Rep. 631; Walden v. Bodley, 14 Peters 156, 10 L. Ed. 398.

We have heretofore referred to the clause contained in the contract with reference to warranties and representations. That clause, as we have heretofore pointed out, is sufficient to estop the vendee, unless it be held ineffective on the grounds advanced by appellant.

By that covenant the vendee expressly bound itself to the contractual admission of the fact that the vendor had not made, and did not make, any *representations* or *covenants* regarding the quantity, quality or value of the timber being sold, nor concerning the logging conditions in connection therewith. In the face of such a contractual admission,

if it be valid, the vendee cannot be now heard to aver to the contrary as ground for rescission and cancellation of the contract for alleged false representations made at or prior to its execution, respecting the quantity, quality, value or logging conditions of the timber thereby purchased.

Such a contractual provision relates to the consideration for the contract. Its effect is to operate as a covenant between the parties that the vendee has previously investigated and has satisfied itself that the quantity, quality, value and logging conditions of the timber has been examined and found satisfactory to it before the signing of the agreement, and that no representation or warranty in regard thereto whether made by vendor or not, has entered into the consideration upon which the contract was made.

Where a vendee is familiar with the subject matter of a transaction, and purchases relying on his own knowledge, he cannot then set up fraud or misrepresentation on the part of his vendor to relieve him of the obligation assumed. Neeld v. Sperry, 101 Fla. 521, 134 Sou. Rep. 500. See also Hirschman v. Hodges, 59 Fla. 517, 51 Sou. Rep. 550. The contractual provision here involved is sufficient to show that before buying, the vendee became familiar with the timber it purchased, and in the absence of fraud or mistake shown *in the inclusion of this clause in the contract,* it must be enforced and given effect as written. Ellas Investment Co. v. Nobles, 102 Fla. 475, 135 Sou. Rep. 909. See Peterson v. Landahl, 86 Minn. 32, 89 N. W. 1131. The clause here is materially different in its purpose and effect from that described in Bridger v. Goldsmith, 143 N. Y. 424, 38 N. Y. 458.

But even if this were not so, the issue presented by defendant's prayer for rescission and cancellation was principally one of fact. As to this issue, the burden of pleading and proving fraudulent misrepresentations as a ground for rescission and cancellation of the agreement was on the

appellant as the party seeking to avoid the contract on such ground. Pryor v. Oak Ridge Development Corp., 97 Fla. 1085, 119 Sou. Rep. 326; Lee v. Clearwater Growers Assn., 93 Fla. 214, 111 Sou. Rep. 722; Stokes v. Victor Land Co., 99 Fla. 795, 128 Sou. Rep. 408; Sebring Co. v. Skinner, 100 Fla. 315, 129 Sou. Rep. 759.

The findings and conclusions of the Chancellor as determined by the final decree, are not shown to have been made against the weight of the evidence, nor are they unsupported by the legal effect of the evidence, as appellant contends.

On the contrary, the careful study of the testimony we have made, has revealed ample evidence to warrant the conclusion of the Chancellor that the equities were with the complainant on this issue. This conclusion requires an affirmance of the decree on that point. Creel v. Abernathy, 102 Fla. 460, 136 Sou. Rep. 229; Woodruff v. Lantana Finance Co., 102 Fla. 950, 136 Sou. Rep. 712.

We hold therefore that the final decree for complainant was authorized by the pleadings and evidence, that no harmful error of practice or procedure occurred at the trial and that such final decree should be affirmed. This affirmance carries with it an affirmance of the confirmation decree as to which no error has otherwise been made to appear.

Decrees appealed from affirmed.

BUFORD, C.J. AND WHITFIELD, TERRELL AND BROWN, J.J., concur.

ELLIS, J., dissents.