**UNITED STATES ex rel. VERMONT INV. CO. v. CITY OF COCOA et al.**

No. 172.

District Court, S. D. Florida.

Nov. 9, 1936.

R. E. Kurtz, of Fort Myers, Fla., for relator.

Russell Snow, of Cocoa, Fla., for City of Cocoa and others.

AKERMAN, District Judge.

In October, 1935, the relator's assignor recovered a judgment in this court against the City of Cocoa, Fla., in the amount of approximately $41,000. It does not clearly appear how this amount was reduced, but on August 28, 1936, the relator petitioned this court for a writ of mandamus against the taxing authorities of the City of Cocoa, requiring them to levy a tax sufficient to pay their judgment, alleging that there was now due thereon approximately $39,000. The respondent has answered the alternative writ, which answer, after making certain qualified denials that are not material to consider, asks the court to spread the levy in a peremptory writ of mandamus over a period of ten years. After argument of counsel, the court took the case under advisement and requested briefs on both sides in this cause and also briefs from eminent counsel as to the power of the court to spread a levy in a peremptory writ of mandamus against taxing authorities. In the meantime the same question has arisen in other cases which the court likewise took under advisement and received briefs from counsel in those cases. I have given the matter careful consideration and have duly considered the interesting arguments in favor of such spread and have arrived at a definite conclusion as to the position the court should take in regard thereto and will now attempt to state such conclusion and the reasons therefor.

It may be well to review the history of events and the present condition of the taxing divisions in the State of Florida resulting therefrom. These are general observations and are not intended to apply to any particular taxing division and particularly not intended to apply in all respects to the respondent City of Cocoa.

For more than a decade prior to the general collapse in the State of Florida which began in 1925 or 1926 and culminated with the general national depression a reckless spirit of extravagant expenditures seemed to possess the governing authorities and the citizens of the respective taxing divisions of the State of Florida which spirit was augmented by bond brokers who profited by the sale of bonds and a large number of these taxing divisions floated bonds in amounts which should have been apparent at that time and it is certainly apparent now never will be paid. Most of these bonds were validated by solemn decrees of the courts of the State of Florida,

and the full taxing powers of such political divisions were pledged for the payment of the principal and interest of these bonds. As long as conditions were prosperous and values were increasing, the maturities of these bonds were met by the payment of principal and interest, but when the collapse came, the inevitable result was that payments could not be met and millions of such bonds are now in default.

As suits began to be filed in the courts by the holders of these bonds, there has seemed to be a general spirit of repudiation and every conceivable defense has been interposed in the courts to defeat recovery by the bondholders.

With a few exceptions here and there, as far as I have been able to observe, the courts of the United States and of the State of Florida have firmly set their seal of disapproval upon such defenses and have almost invariably entered judgment in favor of the bondholders.

Different legislative schemes and devices have been tried to prevent the collection of these judgments and have been invariably stricken down by the court. In the meantime, no serious attempt has been made by many of the tax authorities to levy and collect taxes to pay these bonds, principal and interest as the same matured, and, now, as a last resort, it is proposed that the court further aid in a scheme to delay the collection of these bonds by a spread of the levy over a period of years, which, in many instances, would amount to the court setting its seal of approval upon repudiation. I am aware that the constitutional prohibition against the impairment of the obligation of contracts is only effective against legislative bodies (Const. art. 1, § 10), but I am of the opinion that the spirit of such constitutional prohibition should govern the courts as well as legislative bodies, and that the court should never put its seal of judicial approval on any attempt to impair the obligation of contracts.

I can conceive of nothing that would tend more to bring the State of Florida into disrepute than to have the impression go out into the financial and commercial world that the courts of Florida failed to respect and enforce the obligation of contracts.

As previously stated, at the time of the issuance of these bonds the full taxing power of the respective taxing divisions was pledged for their payment and in the opinion of the court it would be unconscionable for the court to deny to the creditor his right to exhaust his security. Whether by ordering a tax levy sufficient to pay his debt would result in a final collection thereof is of no more concern of the court than whether by decreeing the sale of mortgaged property the property would bring the full amount of the mortgage. Therefore, I am firmly convinced that it would be a gross abuse of discretion for the court, without the consent of the creditor, to provide in a peremptory writ of mandamus for a spread of the levy over any long period of years. However, I am of the opinion that each case should stand on its own bottom, and, if it can be shown to the court that by a spread of the levy over a short number of years, the creditor would in that time in all probability secure full payment, I believe that a short spread should be made, but where no showing is made that by such spread the creditor could be paid in full within a reasonable time, I do not believe any good could be accomplished by such a spread, or, in other words, there is no use to postpone the evil day.

I have a very great sympathy for the taxpayers, but I believe that it would be a mistaken kindness to hold out false hope to the taxpayers and they should know that when the taxing power against their property has been pledged for the payment of a debt that the debt must be paid, even if their property is to be sacrificed, and where no showing is made that by a short delay creditors may be paid in full and the taxpayer's property saved to him, the greatest kindness the court could do the taxpayer would be to order a levy which might result in completely wiping out his interest in his property.

In cases where the petitioning creditor is willing to a spread the court will gladly make any spread he may consent to, and the court is of the opinion in many instances it might be wise for the creditor to give such consent, but, if the creditor insists on his legal right and no sufficient showing is made that by a short delay he could be paid in full, the peremptory writ must issue for the full amount in those instances where no limit was placed upon the taxing power at the time of the issuance of the bonds.

In the present case, in the opinion of the court no sufficient showing is made by

the answer as to justify the court in making the spread. However, leave will be granted to the respondents to within ten days file an amended answer setting up such facts, if they exist, as would justify the court in making a spread in accordance with the principles hereinabove announced.