CARROLL, Judge.
The appellants, who were the defendants below, appeal from an order denying their motion to dismiss the complaint ánd granting an injunction.
On September 14, 1973, the appellee filed this action for declaratory judgment in the circuit court for Dade County. Therein it was alleged that based on a contract dated September 7, 1972, which was consummated by a closing on October 16, 1972, the plaintiff purchased from the defendants a parcel of land in Broward County, known as the Morton Tract, for a consideration of $6,900,000. As part of the purchase price plaintiff gave defendants a promissory note for $5,400,000 payable on October 16, 1978, with interest thereon at the rate of 6% per annum payable quarterly, except that the interest for the first year was made payable at the end of that year, on October 16, 1973. To secure the note, plaintiff gave defendants a purchase money mortgage, which contained an acceleration clause, with a fifteen-day grace period.[1]
It was alleged that the tract, which was located in the city of Miramar, was zoned P-“Planned Unit Development” (herein referred to as PUD); that after execution of the contract and prior to the closing of the sale thereunder the plaintiff had satisfied itself that the property was zoned PUD as represented, by obtaining an opinion to such effect from the city attorney, a confirmation thereof from the mayor and by studying the “official map, plats and records of the City which confirmed said zoning”; that plaintiff’s assignee began preparation for development of the property consistent with said zoning and obtained preliminary plat or plan approval from the city zoning board but that the city council refused to approve the same and thwarted the development of the tract as proposed to be made in accordance with the PUD zoning; that plaintiff had filed an action in mandamus in the circuit court of Broward County to compel the city to approve the preliminary plat; that final judgment was entered therein denying mandamus.
In that judgment, in Broward County, the court found the city had zoned the property PUD in 1968, and that while its action in so doing had not been “in strict compliance with notice requirements of Florida Statute 176.05” the city was es-topped to renounce such zoning; that the city had tabled the application of the owner for approval of its unit development plan; and that a noticed public hearing would be required on plaintiff’s proposed plat or plan for development under the PUD zoning.
The complaint further alleged that plaintiff “was instituting” an appeal from the mandamus judgment, to the Fourth District Court of Appeal;[2] that because it had been represented that the property was zoned as PUD and it had been purchased by plaintiff “for utilization as a building site in accordance with Pud zoning” the plaintiff would be entitled to rescission of the sale, on the ground of mutual mistake, *143 after the determination of the appeal that was being taken, if thereby the mandamus judgment was not reversed; and that plaintiff’s prayer for rescission “must be dependent upon a final judical determination and appellate review of the Final [mandamus] Judgment”.
The plaintiff prayed for advancement of the cause for an early trial, and that pending the determination of its said appeal the court decree a moratorium on the plaintiff’s obligation to pay the interest due October 16, 1973, and that defendants be enjoined from foreclosing or taking other legal action for nonpayment of such interest; and further that if plaintiff’s appeal from the mandamus judgment should result in an affirmance that then rescission of the sale be ordered.
The defendants moved to dismiss the complaint, contending among other things that it did not present a basis for declaratory judgment and did not set forth facts on which relief could be granted. Hearing thereon was had on October 9, 1973, and the order appealed from was entered on October 17, 1973. The order denied the motion to dismiss, required defendants to answer within two days, held the action was properly brought under Chapter 86 Fla. Stat., F.S.A., and, based on the allegations of the complaint confirmed by an affidavit of the plaintiff, relieved the plaintiff, until further order of the court, of its contract obligation to pay the [$324,000] interest payment which had become due on the note and mortgage on October 16, 1973 (the day before entry of the order), and enjoined the defendants from declaring a default or seeking foreclosure of the mortgage for nonpayment of said interest. An injunction bond of $5,000 was required to be filed by the plaintiff.
In seeking reversal of that order the appellants contend the complaint failed to state facts upon which relief could be granted in view of provisions of the contract, and that it was error to impair and abrogate the obligations of the note and mortgage contract, by relieving the purchaser of its obligation to pay interest as and when provided for in the note and mortgage and enjoining defendants from exercising their rights to enforce payment.
We find merit in those contentions of the appellants. The complaint failed to state a cause of action, and the defendants’ motion to dismiss should have been granted. It was error to grant a “moratorium” to the plaintiff on its obligation under its contract, and the order restraining exercise by the defendants of their contract rights under the note and mortgage was improvidently issued.
The action was not one for rescission. According to the complaint, at some future date (depending on the outcome of an appeal which was being or was to be filed), the plaintiff was to decide whether to retain the property acquired on the sale, or to attempt to rescind the sale. Moreover, even if the complaint should be considered as presenting a claim for rescission, no actionable ground for rescission was shown, in view of the provisions of the contract which are shown below. See Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408; Standard Lumber Co. v. Florida Industrial Co., 106 Fla. 884, 141 So. 729, 734; Byrd v. Smith, 114 Fla. 24, 152 So. 851, 852; Johnson v. Green, Fla. 1951, 54 So.2d 44.
The contract upon which the property was purchased, a copy of which was attached to the complaint, stated in paragraph 10 that the property was being purchased “as is” except as provided for in paragraph 13 of the contract, with a proviso that if the sale were closed “the representations of fact” in paragraph 13 “shall be deemed fully met or waived and extinguished as between Seller and the Purchaser for all purposes.”
Paragraph 13 of the contract was as follows :
“13. ■ The closing of this transaction is subject to verification by the Purchaser *144 on or before October 16th, 1972, of the following facts:
“A. That the site map or plan prepared by Sanford Sevel of the Planned Unit Development for the subject property, a copy of which is attached hereto and by reference made a part hereof is that plan for the development of the subject property which is approved by the City of Miramar, Florida, under its Planned Unit Development zoning ordinance, and that no official action has been taken by the City of Miramar which would prevent development of the subject property in accordance with the said site map or plan.
“B. That water and sewer are available for the property to be brought to the property by the Purchaser at its own expense.
“C. That Sellers are the record owners of the property to be conveyed hereunder.
“D. Sellers have no knowledge as of the data of this Agreement of any conditions or facts which would prohibit or adversely affect the use of the property by Purchaser for the purposes hereinbe-fore stated and in conformity with this Agreement.
“E. . That no notice of any rezoning of the property has been received as of the date of these presents.
“F. That the restrictions, easements, conditions and limitations of record, if any, to which good and marketable title is made subject according to the provisions of paragraph 4 above do not prevent the development of the property in accordance with the Planned Unit Development plan filed with the City of Mira-mar, a copy of which is attached hereto and by reference made a part hereof.
“The Purchaser shall have until October 16th, 1972, within which to make its own investigations to verify the statements of fact set forth in subparagraphs 13A through F above. If the said statements of fact are true then this transaction shall be closed as herein provided.
“If any of the facts stated in subpara-graphs 13A through F above are not true then Purchaser, at its election, may close this transaction thereby waiving and extinguishing any and all objection or claim that said statement of facts is not true; or the Purchaser may give written objection to the Sellers as to which of said statements of fact are not true and in what particular the same are not true, and may rescind the transaction ab initio and procure the return of the deposit unto the Purchaser from the Seller, in which event this contract shall be at an end and neither party shall have any other or further obligation to the other by reason of the making of this contract.
“In any event the provisions of this paragraph and the representations of fact herein made shall not survive or extend beyond the closing.” [Emphasis supplied.]
Thus by express provisions of the contract no representations therein, as contained in its paragraph 13, survived the closing of the sale. Not only did the complaint fail to allege that an investigation by the plaintiff prior to the closing had revealed any facts stated in paragraph 13 to be untrue, but on the contrary it was alleged the purchaser had satisfied itself with respect thereto by its investigation prior to closing.[3]
*145 Although not clearly expressed in the complaint, the position asserted by the plaintiff appeared to be that because the plat or plan which initially was presented by or on behalf of the plaintiff for development of the land under the PUD zoning was not accepted by the city, the plaintiff should be relieved of its obligation under its note and purchase money mortgage until it should decide, at some time in the future, whether to retain the property or to seek rescission for an alleged misrepresentation in paragraph 13 of the contract, notwithstanding the provisions of the written purchase contract whereby it was agreed that any representations therein “shall not survive or extend beyond the closing.” [4]
While the contract clause in the federal constitution prohibiting the impairment by states of the obligations of contracts has been held to apply to impairment by legislative action rather then by judicial decisions, the complaint in this case furnished no lawful basis to impair and abor-gate the obligations of the contract by judicial action.[5] The challenged order, which relieved the plaintiff of its obligation to pay interest as provided for under the note and mortgage and enjoined the holders thereof from enforcing their rights, was an impairment of the obligations of the contract, and a taking of property of the defendants without due process of law in violation of state and federal constitutional prohibitions.
For the reasons stated, the order appealed from is reversed, and the cause is remanded to the circuit court with direction to dismiss the complaint.
Because a result of this decision is that the annual interest payment of October 16, 1973, and a subsequent quarterly interest payment are now past due under the note and mortgage, it is hereby ordered that there shall be a grace period of 15 days from the date of the filing in the circuit court of our mandate in this case, within which said past due interest (with interest accrued thereon) may be paid without incurring a default.
Reversed and remanded with direction.

. The mortgage and note made provision for one six month moratorium for payment of interest in the event that unavailability of water and/or sewer should prevent the obtaining of a building permit on the encumbered property. That provision, which was not invoked or involved in this case, related to the time for payment of interest which would accrue during such a six month moratorium, if invoked for that reason, with provision that thereafter the interest for that period would be paid with the two quarterly interest payments falling due next thereafter.

. The mandamus judgment was dated August 13, 1973. A petition for rehearing was filed, but the record does not show the date of disposition thereof, which would determine the rendition date of the judgment.

. “Paragraph 13(f) of the Purchase Agreement (Exhibit ‘A’) provides that if any of the facts as set forth in Paragraphs 13(a) through (f) of said Agreement were not true, then Purchaser (plaintiff herein) would still be entitled to Close the transaction. If the plaintiff made that election, the Agreement provided that the plaintiff would waive and/or extinguish all of its obligations or claims as to the truth of the statements contained in said paragraphs 13(a) through (f). It was within these paragraphs that *145 the defendants stated, as a fact, that the property, the subject matter of this sale, was zoned PUD.
“Following the execution of the Purchase Agreement (Exhibit ‘A’), the plaintiff satisfied itself that the property was zoned as represented: PUD. For if the property was not so classified, the plaintiff would not have concluded the said purchase. The plaintiff did the following acts in its effort to satisfy itself of the said zoning classification : ” [Thereunder outlining the investigation made by the plaintiff as stated earlier in this opinion.]

. Where property is zoned for “planned unit development”, an owner’s plan or plat for development thereof must meet certain criteria such as those relating to type and nature of use of proposed structures, percentage of open or public areas, etc. The fact that a plan for development of a parcel zoned PUD may not be acceptable to the governing unit, ordinarily would not afford a basis to conclude that a proper and appropriate plan for development under the PUD zoning would not be acceptable to the city council.

. In 1936, at a time when bonds issued by governmental units of the State of Florida were generally in default, the efforts of holders to enforce payment thereof were being met by attempts of the bond debtors to be relieved of their obligations thereon. Upon rejecting such an effort in the case of United States ex rel. Vermont Investment Co. v. City of Cocoa, D.C., S.D.Fla.1936, 17 F.Supp. 59, 60, the Court (Akerman, J.) said:
“ * * * I am aware that the constitutional prohibition against the impairment of the obligation of contracts is only effective against legislative bodies (Const, art. 1, § 10), but I am of the opinion that the spirit of such constitutional prohibition should govern the courts as well as legislative bodies, and that the court should never put its seal of judicial approval on any attempt to impair the obligation of contracts.
“I can conceive of nothing that would tend more to bring the State of Florida into disrepute than to have the impression go out into the financial and commercial world that the courts of Florida failed to respect and enforce the obligation of contracts.”
Compare, Campbell v. Werner, Fla.App.1970, 232 So.2d 252.