QUESTIONS:
1. In the event that a surplus from a tax deed sale exists after ad valorem tax and special assessment liens are first satisfied, and assuming no private liens exist, should the clerk distribute said surplus to satisfy in full, or if the surplus is insufficient, on a pro rata basis, all liens of varying priorities held by any government unit including, for example, Internal Revenue Service liens, State of Florida liens for sales tax, intangible tax, Workmen's Compensation, county welfare liens, etc.?
2. In the event that said surplus exists and both public and private liens are of record, what is the clerk's duty as to distribution of said surplus; for example, assuming three liens in the following order of priority exist, i.e., an Internal Revenue Service lien, a mortgage, and a county welfare lien, and the federal and private lien in the absence of a tax deed sale would have priority over the county welfare lien, should the clerk satisfy the federal lien and not the others; or, assuming sufficient funds exist, should the clerk satisfy all three in order that the county lien will be satisfied?
3. In the event that said surplus exists and only private liens are of record, what is the clerk's duty as to distribution of said surplus?
SUMMARY:
Section 197.291(2), F. S., requires the clerk of circuit court to distribute the excess proceeds from a tax deed sale to satisfy any liens of record held by governmental units against the property. In the event that such proceeds are insufficient to satisfy all such liens in full, the clerk is directed to disburse the surplus proceeds to the governmental units pro rata in full satisfaction of the liens. Any remaining balance of undistributed funds is to be retained for the benefit of the legal titleholder.
Application of this statute in certain circumstances involving perfected federal tax liens, state liens for sales or intangible taxes, workmen's compensation liens, county welfare liens, and perfected private mortgage and other liens may encounter constitutional difficulty, however, because compliance with its mandate could alter the lawfully established and the normal priority of liens and extinguish a lienholder's or property owner's rights in or to the surplus proceeds of the tax deed sale. Such application and distribution of such proceeds may operate to divest or impair constitutionally protected contractual and lien or property rights in violation of the Due Process and Contract Clauses of the Florida and United States Constitutions, in the absence of statutory notice that such rights may be so divested or impaired by operation of the distribution scheme prescribed by the statute. To the extent that such distribution displaced or impaired a federally held lien, the statute would appear to be violative of the Supremacy Clause of the United States Constitution.
The Attorney General cannot declare a statute unconstitutional or advise any officer to disregard a legislative direction or mandate. On the contrary, the statute is presumed to be constitutional and must be given effect until judicially declared invalid. In the event that the clerk of circuit court has reasonable doubts as to the statute's validity or its application in the foregoing circumstances or his duties thereunder, he has standing to bring an appropriate judicial proceeding for declaratory relief against the property owner and the holders of perfected and recorded liens to determine its validity and his duties thereunder.
Section 197.291(2), F. S., as amended by s. 4 of Ch. 77-354, Laws of Florida, which governs the distribution of excess proceeds from a tax sale, reads in pertinent part:
 If the property is purchased for an amount in excess of the statutory bid of the certificate holder, the excess shall be paid over and disbursed by the clerk. The clerk shall distribute the excess to the governmental units for the payment of any lien of record held by a governmental unit against the property. In the event the excess is not sufficient to pay all of such liens in full, the governmental units shall be paid the excess pro rata in full satisfaction of the lien. If, after all liens of record of the governmental units upon the property are paid in full, there remains a balance of undistributed funds, the balance of the purchase price shall be retained by the clerk for the benefit of the person who on the day of the sale was the legal titleholder of record. . . .
The Department of Revenue has promulgated an administrative rule construing and implementing s. 197.291(2), F. S., the material part of which, for the purposes of this opinion, was not affected by the amendatory provisions of s. 4 of Ch. 77-354, supra. Rule 12D-12.38, F.A.C., reads in pertinent part:
 If the property is purchased for an amount in excess of the statutory (opening) bid the excess shall be distributed to governmental units for the payment of any lien of record held by a governmental unit against the property. If the excess is not sufficient to pay all of such liens in full, then the governmental units shall be paid the excess on a pro rata basis in full satisfaction of the liens.
 If, after all liens for general taxes are paid in full, there remains a balance of undistributed funds, the clerk shall retain said funds for the person who on the day of the sale was the legal titleholder of record.
The quoted portion of the rule essentially tracks the language of s. 197.291(2), but then departs from the ordinary meaning of that language by limiting the scope of disbursement to `all liens for general taxes.' Compare the language of the statute requiring disbursement to satisfy `any lien of record held by a governmental unit.'
A proper response to your questions must begin with some observations about lien priorities under the law and the constitutional protection given to lienholders. A lien is a species of property protected by the due process clauses of the United States and Florida Constitutions. See Amendment XIV, United States Constitution; s. 9, Art. I, State Const.; City of Sanford v. McClelland, 163 So. 513 (Fla. 1935); Seaboard All-Florida Rwy. v. Leavitt, 141 So. 886 (Fla. 1932). A lien or right against the security of a mortgage or other lien is founded on contract, the impairment of which is prohibited by the contract clauses in the United States and Florida Constitutions. Section 10, Art. I, United States Constitution; s. 10, Art. I, State Const.; Morton v. Zuckerman-Vernon Corp. 290 So.2d 141 (3 D.C.A. Fla., 1974).
Florida has by statute made all ad valorem taxes first liens, superior to all other liens, on any property against which the taxes have been assessed, which continue in force from January 1 of the year the taxes were levied until discharged by payment as provided in Ch. 197, F. S., or until barred by Ch. 95, F. S. See
ss. 192.053 and 197.056(1), F. S. A lien created through the sale of a tax certificate may not be foreclosed or enforced in any manner except as prescribed in Ch. 197. See s. 197.056(2). Other statutes give certain special assessment liens a priority equal to that of liens for general taxes and superior to all other liens.See, e.g., ss. 153.05(10) and 170.09, F. S. For all other liens, the general rule at common law is that liens take precedence in the order of their creation unless a lien prior in time is intrinsically defective or is destroyed by some action of the lienholder. Richardson Tractor Co. v. Square Deal Machinery Co., 149 So.2d 338 (3 D.C.A. Fla., 1963); 51 Am. Jur.2d Liens s. 52 (1970). Therefore, absent statutory authority to the contrary, lien priorities are determined by the chronological order in which they are perfected and recorded in the official records of the appropriate county or counties as may be required by statute to be effectual against creditors on subsequent purchasers for value without notice. See, e.g., s. 695.01, F. S.
I note, parenthetically, that the intangible tax and sales tax liens mentioned in your first question are accorded a priority based on their chronological order of perfection and recordation.See ss. 199.262 and 212.15(3), F. S. See also s. 214.45, F. S. The special act creating the county welfare lien provides that it shall be enforceable `in the same manner as mortgages.' Chapter 63-1787, Laws of Florida. Therefore, such liens are also governed by the common law rule, i.e., their priority is determined by chronological order of perfection and recordation. The workmen's compensation lien is given the same preference of lien against the assets of an insurance carrier or employer as is allowed by law to the claimant for unpaid wages or otherwise. Section 440.23, F.S. Compensation orders of a judge of industrial claims or orders of the Industrial Relations Commission, in the event of default or failure to comply with such order, are enforceable by the appropriate circuit court having jurisdiction by a writ of execution or such other process of the court as may be necessary to enforce such orders. Section 440.24, F. S. Such compensation liens or writs of execution therefore take priority in the order of their perfection and recordation. See also ss. 713.07 and713.50, F. S., for the priorities and recordation and perfection of mechanics' liens of laborers against real property and the priority and enforcement of other miscellaneous liens on personal property respectively. Section 197.291(2), F. S., does not in terms expressly alter this well-established scheme of priorities. Nothing in the statute purports to make any lien superior to any other lien or give any priority to a public charge or nonproperty tax lien. Rather, the statute deals exclusively with the distribution of excess proceeds from a tax sale, by commanding the clerk to distribute the surplus to `the governmental units for the payment of any lien of record. . . .' Nevertheless, if the clerk obeys this statutory mandate his action may result in an unconstitutional deprivation or impairment of lien or property rights or impairment of contract rights.
In the first place, such a distribution would operate to destroy any rights of private or public lienholders of record in or to the excess proceeds of a tax deed sale, which rights might otherwise take priority. Although Florida courts appear not to have addressed the question, a number of other jurisdictions protect a private lienholder's rights to a tax sale surplus. 72 Am. Jur.2dState and Local Taxation s. 911 (1954); 85 C.J.S. Taxation s. 817(b) (1974). These other jurisdictions include `lien' states, where the lienor receives no title or estate in the mortgaged property. See 59 C.J.S. Mortgages s. 1(b)(1), n. 15 (1949). Florida is a `lien' state, Section 679.02, F. S.; Georgia Casualty Co. v. O'Donnell, 147 So. 267 (Fla. 1933); Hoffman v. Semet,316 So.2d 649 (4 D.C.A. Fla., 1975). If presented with the issue, the Florida courts might well follow this body of authority in recognizing a private or public lienholder's rights in or to the tax deed sale surplus proceeds.
Moreover, strict compliance with the statutory mandate would destroy the normal priority inter se of liens held by the governmental units. The statute requires that such liens be satisfied pro rata rather than in their normal order of priority whenever the excess proceeds fail to cover the full amount of such liens. To that extent liens for special assessments and various other public liens prior in time will be partially subordinated to subsequent nonproperty tax public liens.
Finally, although the statute commands that recorded public liens held by a governmental unit against the affected property be satisfied, there is no requirement that such public liens be choate. Inchoate public liens (e.g., contingent liens and liens not fixed in amount) might thus be elevated to parity with choate public liens and be given superiority over choate private liens. The statutory distribution may therefore offend the general rule that choate liens are superior in dignity to inchoate liens. Cf. United States v. Security Trust and Savings Bank of San Diego,340 U.S. 47 (1950), upholding a federal tax lien against an existing inchoate attachment lien.
The holders of liens which are in effect wholly or partially subordinated by the clerk's distribution of the surplus proceeds stand to lose their security interests entirely. The effect of a tax deed sale is to extinguish existing interests in or liens upon the property (with exceptions not relevant here), so that the purchaser may acquire an independent and unencumbered title. Section 197.271, F. S. See Stuart v. Stephanus, 114 So. 767 (Fla. 1927); Torreyson v. Dutton, 188 So. 805 (Fla. 1939), modified190 So. 430 (Fla. 1939); Lee v. Carpenter, 132 So.2d 433 (2 D.C.A. Fla., 1961). Therefore, the holders of such existing liens are barred from foreclosing or obtaining execution on their liens on or against the property, although they may still proceed in personam on the debt. The divestment or impairment of lien rights by a statute regulating only the distribution of the excess proceeds of a tax deed sale may, however, offend the constitutional due process and contract rights guarantees described above.
It has been held that a state legislature may, by statute, alter prospectively the priority of liens arising under state law so as to give priority to a public charge. See Provident Inst. For Savings v. Mayor and Alderman of Jersey City, 113 U.S. 506 (1885); Glisson v. Hancock, 181 So. 379 (Fla. 1938); 51 Am. Jur.2d Liens
s. 57 (1970). It is questionable, however, whether this result can be accomplished through the medium of a statute which purports only to govern the distribution of tax deed sale surplus proceeds, without any express language in the text or title of the act relating to lien priority. See Ch. 73-332, Laws of Florida. Cf. City of Lake Worth v. McLeod, 151 So. 318 (Fla. 1933), holding that a statute requiring officers making sales of property under judicial process (in an action to foreclose a state and county tax certificate) to pay from the proceeds of such sale all state, county, and municipal taxes did not regulate liens and priorities of taxes and special assessments. See also State ex rel. Housing Auth. of Plant City v. Kirk, 231 So.2d 522 (Fla. 1970), in which the court held that an excise tax exemption for public housing authorities, established by longstanding legal precedent, could not be repealed by implication in an amendment to the statute when the amendment did not expressly mention public housing authorities and when the title to the amendatory act conveyed no notice that the term `business' had been redefined or that there was any purpose to impose such tax on public housing authorities. It is also questionable whether this result can be accomplished without any limitation whatsoever on the nature of the public charge(s) or liens to be given priority. For example, the application of this statute to publicly or privately held liens (other than liens for general taxes and special assessments given priority by statute) would permit a property owner to subordinate a prior mortgage or other perfected lien, thereby obtaining a personal benefit through his unilateral action in granting a county welfare lien which is by law enforceable in the same manner as a mortgage. The consideration for such lien (welfare funds or services) does not improve or enhance the value of the encumbered or mortgaged property, nor does the mortgagee or other lienor have any statutory notice in advance that his lien priority or constitutionally protected contract and property rights may be so divested or impaired. These difficulties may well be grounds for objection under the Due Process and Contract Clauses, supra.
Wholly apart from the foregoing discussion, your questions raise the additional problem of how s. 197.291(2), F. S., applies to afederal tax lien. Liens arising under federal law are governed by federal law and may not be subordinated or displaced by a state statute. See United States v. Equitable Life Assur. Soc.,384 U.S. 323 (1966); United States v. Roessling, 280 F.2d 933 (5th Cir. 1960); United States v. First Federal Savings Loan Ass'n,155 So.2d 192 (2 D.C.A. Fla., 1963). In Roessling, supra, the Fifth Circuit ruled that a federal mortgage lien which was prior in time to a Florida ad valorem tax lien was superior to the tax lien, absent a federal statute to the contrary. With respect to federal tax liens arising under the Internal Revenue Code, it appears that Congress has now consented to the subordination of such liens to state-created liens for ad valorem taxes and special assessments, where state law gives such liens priority over all other liens arising under state law. 26 U.S.C. § 6323(b)(6)(A) and (B).
This federal statute does not, however, permit a federal tax lien to be wholly or partially subordinated to any lien not permit a federal tax lien to be wholly or partially subordinated to any lien not enumerated in the federal statute or liens not given the requisite priority by state law or to subsequent state liens for sales or intangible taxes, workmen's compensation, or county welfare payments or services. It certainly does not permit a perfected federal tax lien to be wholly or partially subordinated to an inchoate lien arising under state law. United States v. Security Trust and Savings Bank of San Diego, supra. Finally, the federal courts have held that, in the event property subject to a federal tax lien is sold for ad valorem taxes, the federal tax lien is converted to a right in or to the surplus proceeds of the tax sale, superior to the rights of the previous record owner (who, incidentally, was not the party liable for the federal tax). Moyer v. Mathas, 332 F. Supp. 357 (S.D.Fla. 1971), aff'd,458 F.2d 431 (5th Cir. 1972). Under these authorities a state statute operating to divest or impair federal rights in the surplus proceeds of a tax deed sale would appear to be violative of the supremacy clause of the federal constitution. Article VI, paragraph 2, United States Constitution.
The foregoing observations and authorities lead me to the conclusion that the application of s. 197.291(2), F. S., in the circumstances aforesaid, may impair constitutionally protected contract and lien or property rights and contravene the Supremacy Clause of the United States Constitution. The statute is presumed to be constitutional, however, and must be complied with until such time as it is judicially declared invalid. Evans v. Hillsborough County, 186 So. 193 (Fla. 1938); White v. Crandon,156 So. 303 (Fla. 1934). This office has no authority either to declare the statute invalid vel non or in its application to the facts delineated in your inquiry, or to advise noncompliance with its direction or mandate.
The clerk of circuit court will have to follow the requirements of s. 197.291(2), F. S., in disbursing the excess proceeds of a tax deed sale unless he has reasonable doubts as to its validity in the circumstances specified in the questions posed herein. In that event, however, he has standing to institute legal proceedings to determine the validity of the statute and his duties thereunder. State ex rel. Harrell v. Cone, 177 So. 854 (Fla. 1938); State v. Hale, 176 So. 577 (Fla. 1937); White v. Crandon, supra. I therefore suggest that, if the clerk is unsure as to the validity of the statute or its application to the property owner and the liens and lienors hereinabove discussed, he bring proceedings for declaratory relief against the property owner and all holders of recorded liens to determine the statute's validity vel non or in its application to the property owner and the lienors in question and his duties thereunder.
Prepared by: Staff