528 So.2d 463 (1988)
Wayne H.L. ROHLFING, Appellant,
v.
TOMORROW REALTY & AUCTION CO., INC., et al., Appellees.
No. 87-104.
District Court of Appeal of Florida, Fifth District.
July 7, 1988.
*464 Stephen M. Stone, Orlando, for appellant.
W.C. Hutchison, Jr., of Hutchison & Mamele, Sanford, for appellee Ernest Morris, Sr.
No appearance for appellee Tomorrow Realty and Auction Co., Inc.
COWART, Judge.
This case involves an auction sale of land, an action at law on a buyer's deposit check, and the defenses of (1) lack of mutuality of obligation and remedy, and (2) the statute of frauds.
By an "Auction Agreement," a seller (appellant Wayne H.L. Rohlfing) and an auctioneer (appellee Tomorrow Realty and Auction Company) contracted in writing for the auctioneer to sell the seller's land at public auction. After signing a pre-auction document known as "Real Estate Terms of Sale" and receiving a written "Buyer's Guide" and having been advised as to the auctioning procedure, a buyer (appellee H. Ernest Morris, Sr.) made the highest bid on the land. The auctioneer accepted the buyer's bid and discontinued the auction sale. The buyer thereupon signed a written *465 "Memorandum of Sale at Public Auction" and delivered his deposit check for $37,500. To further formalize and evidence the transaction, several copies of a written "Contract for Sale and Purchase" were prepared. One copy was signed by the auctioneer as agent for the landowner. The buyer acknowledged that he signed another copy but it was misplaced and not offered into evidence. Later the buyer stopped payment on his deposit check. The seller and auctioneer brought an action at law, for money damages for the $37,500 deposit, alleging that the buyer breached his agreement to purchase.
The trial court found that the auction sale and documents in evidence did not satisfy the statute of frauds. The court reasoned that (1) the Auction Buyer's Guide was not signed by either the buyer or seller, (2) the written Real Estate Terms of Sale was signed only by the buyer and not the seller, (3) the written post-sale Memorandum of Sale was signed by the buyer but not the seller, and (4) the copy of the written "Contract for Sale and Purchase" in evidence was signed by the seller but not the buyer. The trial court also found that no enforceable contract was established because (1) the documents contained no mutually enforceable promises (i.e., that the buyer could not have enforced the agreement to sell against the seller), and (2) the buyer had, by stopping payment on his check, withdrawn his offer before it had been accepted. The trial court held for the buyer. The owner appeals.
The written "Auction Agreement" was sufficient (1) to establish the auctioneer as the seller's agent to sell the land in question and (2) to lawfully authorize the auctioneer to act as the seller's agent to contractually bind his seller-principal on a contract for the sale of land. The Buyer's Guide was a custom-printed writing for this auction only and contained all of the essential terms and conditions of the sale. The written "Real Estate Terms of Sale" signed by the buyer explicitly refers to the Buyer's Guide. By his written "Memorandum of Sale at Public Auction" executed after the sale, the buyer acknowledged that he had bought the land in question at public auction and stated "I have agreed and do hereby agree to sign and execute a Contract For Sale and Purchase this day, as per the announced terms of this auction." The Contract for Sale and Purchase which the auctioneer signed as agent for the seller, also explicitly refers to the Buyer's Guide.
We find and hold that the written "Real Estate Terms of Sale," together with the written "Buyer's Guide" to which the Real Estate Terms of Sale refers,[1] the written "Memorandum of Sale at Public Auction," and the buyer's deposit check with the notations thereon, are sufficiently definite and certain to establish a contract to buy land that complies with the statute of frauds and is enforceable against the buyer. These documents together[2] also constitute a sufficient "note or memorandum" "in writing and signed by the party to be charged therewith" of a "contract for the sale of lands" as to satisfy the requirements of the statute of frauds, section 725.01, Florida Statutes.[3]
We also find that the documents executed by the seller, personally and by his duly authorized agent, the auctioneer, *466 are likewise sufficient to satisfy the requirements of the statute of frauds and to constitute a contract for the sale of lands legally enforceable against the seller; although, for reasons given below, we do not consider it essential to a proper disposition of this case.
While the above findings constitute a sufficient basis for a reversal in this case, because we do not agree with several assumptions as to the law that are implicit in the issues presented by the parties and in the rationale of the trial court's ruling, we write further to qualify what could otherwise be inferred from a decision based on the above basis.
An auction sale is an ancient and legitimate method of selling land but is relatively unique and its peculiarity has caused the evolution of novel applications of several basic legal principles.
First, the law of agency peculiarly applies to an auctioneer, who, while primarily the agent of the seller in making a sale, is for some purposes the agent of both parties. His authority may be express or by implication or ratification. It has been held that the auctioneer may satisfy the statute of frauds by himself or his clerk unilaterally signing, as is apparently customary, a memorandum of the oral sale as agent for both parties.[4] There are no problems in this case in this regard because the auctioneer's authority to act for the seller was express and in writing and is unquestioned and the auctioneer did not undertake to act for the buyer who, in this case, personally signed the Memorandum of Sale at Public Auction and other writings as noted above.
Second, unlike the ordinary sale agreement in the form of a negotiated, written, signed document, which is completed when the second party signs the agreement, at the usual immediate auction at public outcry "sale," the bidders make oral offers to buy and the auctioneer "accepts" the winning offer or bid. The auction's "sale" is complete, in the generally understood sense, when the auctioneer signifies his acceptance of the highest bid by the fall of his hammer or in some other customary manner, and this is so whether the subject of the sale is personalty or real property. Therefore, because each "bid" or "offer" is either rejected in favor of a higher bid, or "accepted" as the highest bid by the auctioneer's words and actions in "crying" and "knocking down" or "striking down" the sold property, the bidder at the usual "immediate" sale auction does not leave the auction arena with an "open" offer which he can withdraw by later stopping payment on his deposit check, as inferred by the judgment in this case.
Although we find in this case that the auctioneer's acts and writings, as agent for the seller, were sufficient to create a contract for the sale of land enforceable against the seller, we do not agree that such was legally essential under any legal doctrine requiring "mutuality of obligation" or "mutuality of remedy" in order for the seller to enforce against a buyer an otherwise legally sufficient agreement to buy land or to recover on the buyer's purchase deposit check. At some long-past time, apparently the right to the specific enforcement of a contract in equity was subject to a doctrine or doctrines variously called "lack of mutuality of remedy" or "lack of mutuality of obligation" to the effect that the first party (the plaintiff) could not enforce, in equity, a contract against the second party (the defendant) unless the second party could also enforce the contract (mutuality of obligation), or had the same remedy to enforce the contract (mutuality of remedy), against the first party. The extent, scope, and application of these concepts were always subject to much disagreement and today can be plainly stated to largely be nothing more than a smoke screen defense. The very nature of an executory contract is such that the second party accepts an offer or promise made by the first party by doing an act which the second party did not have a contractual obligation to do. If and when the act by the second party is performed, the first party has received consideration *467 and is then obligated to perform on his promise. However, at this point, only the second party needs a remedy to enforce the promise of the first party. In no real sense is there ever, at any one time, any mutuality of obligation or remedy. All option agreements and similar unilateral contracts are obligations binding only one party. We agree with the statement in LaBonte Precision, Inc. v. LPI Industries Corporation, 507 So.2d 1202 (Fla. 4th DCA 1987) that "[m]utuality of remedy in contracts as a requirement has largely disappeared from the law of American jurisdictions"[5] and that:
(a) the absence of mutuality of remedies will not destroy an agreement's validity;
(b) a want of mutuality is no defense to an executed contract;
(c) a promise lacking mutuality at its inception becomes binding on it promisor after performance by the promisee; and
(d) where there is no other consideration for a contract, mutual provisions must be binding on both parties, but where there is any other consideration for the contract, "mutuality of obligation" is not essential.
Id. at 1203 (citing Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 626 (Fla. 4th DCA 1982)).
In an auction case such as this where the seller and the auctioneer have expended sums for advertising and have turned away other potential buyers relying on the offer made by a bidder, there is ample consideration for the winning bidder's promise to buy.
The trial court's reasoning in this case, that the seller at the auction sale could not enforce the buyer's agreement to buy because the seller was not legally bound to sell to the buyer (i.e., a "lack of mutuality of obligation or remedy"), was also erroneous for reasons other than those already given. This case fits into what in Williams v. Noel, 105 So.2d 901 (Fla. 3d DCA 1958), cert. discharged, 112 So.2d 5 (Fla. 1959) was called "an exception" to the "mutuality of remedy" rule. In Williams, a contract for the sale and purchase of land was executed by the buyer and by J.W. Noel as seller but the land was owned by Isabella Noel, the wife of J.W. Noel, and she did not sign the contract. J.W. and Isabella Noel joined as plaintiffs in a specific performance action on the contract against the buyer who defended on the argument that because Isabella Noel did not sign the contract, its unenforceability against her precluded the enforcement against the buyer because of "lack of mutuality of remedy." The court in Williams not only upheld a summary judgment finding that the husband was the agent of the wife in making the contract, but also held that her action in joining in the suit for specific performance "amounted to an offer of performance by her creating mutuality *468 of remedy at the time of the filing of the suit," citing Standard Lumber Co. v. Florida Industrial Co., 106 Fla. 884, 141 So. 729, 732, (1932) where the supreme court said:
So far as the principle of mutuality is involved as a prerequisite to the maintenance of the suit, it is mutuality of remedy in equity at the time of the filing of the bill that is required, and not a mutuality in the terms of the contract when the contract was made.
Williams v. Noel also points out that the statute of frauds does not require mutuality of remedy or obligation because that statute only requires the agreement or promise upon which the action is brought (i.e., the defendant's covenant which the plaintiff seeks to enforce) "or some note or memorandum thereof" "be in writing and signed by the party to be charged" (i.e., the defendant). The statute of frauds does not require that any covenant or promise or agreement made by the plaintiff be in writing or signed by the plaintiff or his agent; only the covenant or promise or agreement of the defendant which the action is brought to enforce must be in writing or be the subject of a written memorandum. The historical purpose of the statute of frauds, which was to protect defendants from false and fraudulent testimony that the defendant had orally agreed or promised something relating to the class of cases described in the statute, constitutes an explanation for the one-way requirement of the statute. In Williams v. Noel, at page 903, the court stated:
Appellant's argument that the Statute of Frauds, F.S.A. § 725.01 was not complied with was without merit, because the party against whom the contract was sought to be enforced signed it. Cf. United Hardware-Furniture Co. v. Blue, 59 Fla. 419, 52 So. 364, 366, 35 L.R.A.,N.S., 1038 [1910]. See also, Corbin, Contracts, Vol. 5, § 1192, p. 840; Williston, Contracts, Rev.Ed., Vol. V, § 1437, p. 4017; 49 Am.Jur., Statute of Frauds, § 384, p. 686.
Finally, the action on the check under Court III of the Amendment to Complaint in this case can be pursued independently and separately from the land contract to which it related. See Popwell v. Abel, 226 So.2d 418 (Fla. 4th DCA 1969).
For all of the reasons above, the finding below for the buyer is reversed and the cause remanded with directions to the trial court to enter an appropriate judgment in favor of the seller.
REVERSED and REMANDED.
SHARP, C.J., and UPCHURCH, F.D., Jr., Judge, Retired, concur.
NOTES
[1] Documents contain not only their own provisions but also those incorporated by reference to other writings.
[2] An enforceable contract for the purchase and sale of real property can consist of several instruments in writing. See, e.g., Mehler v. Huston, 57 So.2d 836 (Fla. 1952). See also the discussion of the "contemporaneous instrument rule" in Popwell v. Abel, 226 So.2d 418 (Fla. 4th DCA 1969). Likewise, the "note or memorandum" required by the statute of frauds may consist of several written instruments signed by the party to be charged.
[3] In relevant part, the Statute of Frauds (§ 725.01, Fla. Stat.) provides that:

No action shall be brought ... upon any contract for the sale of lands, ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized. [emphasis added]
[4] See, e.g., 7A C.J.S. Auctions and Auctioneers § 8 at nn. 34-36 (1980).
[5] We do not read R.W. Roberts Construction Co., Inc. v. St. Johns River Water Management District, 423 So.2d 630 (Fla. 5th DCA 1982), relied on by the dissent in LaBonte, to be inconsistent with Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 626 (Fla. 4th DCA 1982) or LaBonte. Similar to the situation in this case, there was an underlying argument (and ruling by the trial court) in R.W. Roberts that because an arbitration provision in a contract between a contractor and a subcontractor required claims by the subcontractor against the contractor to be arbitrated but did not require claims by the contractor against the subcontractor to be arbitrated, the arbitration provision of the contract lacked mutuality of obligation and was, therefore, not binding on the subcontractor when sued by the contractor. The appellate holding in R.W. Roberts was essentially only that the action of the trial court in denying arbitration did not constitute a departure from the essential requirements of law justifying review by certiorari. In any event, the appellate holding in R.W. Roberts is now moot without regard to the underlying question as to "lack of mutuality of obligation" because of Combs v. State, 436 So.2d 93 (Fla. 1983), relating to the discretion in district courts of appeal in certiorari cases, and more particularly because all prior holdings to the effect that certiorari was an appropriate method to review an order denying a motion to compel arbitration (See, e.g., 425 Florida, Inc. v. George V. Behan Construction, Inc., 497 So.2d 1340 (Fla. 5th DCA 1986); Graham Contracting, Inc. v. Flagler County, 444 So.2d 971 (Fla. 5th DCA 1983), rev. denied, 451 So.2d 848 (Fla. 1984); Paine, Webber, Jackson & Curtis, Inc. v. Lucas, 411 So.2d 1369 (Fla. 5th DCA 1982)) have been rendered moot by the amendment to the Rules of Appellate Procedure. This amendment, effective January 1, 1983 (463 So.2d 1114), added Rule 9.130(a)(3)(C)(v) to permit the interlocutory review of non-final orders that determine whether a party is entitled to arbitration.